[Crim. No. 1633. Third Appellate District.—August 23, 1938.]

THE PEOPLE, Respondent, v. JOHN KINNEY, Appellant.

· Raymond T. Coughlin, Robert A. Zarick and Thomas O'Hara for Appellant.

U. S. Webb, Attorney-General, and Gordon S. Hughes, Deputy Attorney-General, for Respondent.

THOMPSON, J.—The defendant was convicted of failing to render reasonable assistance to a guest who was injured while riding in his automobile when the machine ran over an embankment. He was indicted and prosecuted under the provisions of section 482 of the Vehicle Code of California.

It is contended the verdict and judgment are not supported by the evidence; that the statute applies only to the driver of an automobile which injures a person in a collision with another machine or which strikes and injures a pedestrian. It is also asserted the court erred in instructing the jury, and that, since the statute provides for different offenses, it must appear that the jurors were unanimous in convicting the accused of a particular crime contained therein.

The defendant was a member of the Sacramento fire department. He answered a false alarm which occurred at 2 o'clock on the morning of January 25, 1938. Patricia Michael and her sister-in-law, Emeline Williams, who lived

together, heard the alarm and went in search of the fire. The defendant met them and went to their apartment, where he persuaded Mrs. Michael to go for a drink and a ride in his automobile. In attempting to make a sharp turn at a high rate of speed onto the Garden Highway beyond the city limits, the defendant lost control of his machine and it plunged over the levee embankment and overturned, demolishing the car, inflicting slight wounds to the defendant's ear and scalp and fatally injuring his companion. She was rendered unconscious, but was still living. He extricated himself from the wreck. About 4 o'clock that morning he knocked at the door of Manuel Costa, who lives in that locality, saying he had had an automobile accident, and asked him for assistance. Together they drove Costa's machine to the scene of the accident, where they found Patricia Michael unconscious and crumpled down between the front seat and the instrument board. They lifted her out and took her in Mr. Costa's automobile to the apartment of her sister-in-law. When they arrived, Mr. Costa discovered that Mrs. Michael had a broken wrist and he observed her serious condition. He then urged the defendant to take the injured woman to a hospital for medical treatment. She was transferred from the Costa machine to the rear seat of Mrs. Williams' car. Costa then went home. The defendant and Mrs. Williams drove with Patricia Michael to the Sacramento emergency hospital. During that journey Mrs. Williams sat in the rear seat supporting the unconscious form of her sister-in-law. On the way to the hospital, the defendant said he intended to represent himself to the attendants as James Madsen, so as to avoid notoriety on account of his position in the fire department. He did introduce himself to them under that fictitious name.

When the defendant arrived at the hospital, he parked the car at the front entrance, and saying, concerning Mrs. Michael, "she is all right", he left the ladies in the car and entered the hospital alone, requesting medical aid for himself only. He did not mention the fact that he had been involved in an automobile accident, nor did he inform the doctor or attendants he had left an injured companion in his car outside the door. He was treated for slight abrasions of an ear and scalp and then returned to the automobile.

Doctor Saeltzer, the attending surgeon at the emergency hospital, testified that the defendant arrived at that institu-

tion at 6:30 A. M. and gave his name as James Madsen; that he said he was slightly injured as a result of falling downstairs; that he did not mention an automobile accident, nor inform him of the injuries sustained by his companion; that he did not say anyone accompanied him to the hospital or remained in his car. The witness said the defendant did not seem to be dazed, but on the contrary appeared to be perfectly rational.

Amy Grau, a nurse at the hospital, corroborated Doctor Saeltzer in all the material circumstances of the affair to which he testified.

While the defendant was receiving treatment for his lacerations, in accordance with the rules of the hospital an officer was summoned to obtain the facts from which a required report of the accident might be made. In response to their message, John Sumner arrived and interviewed the defendant. He testified that the defendant gave his name as James Madsen, and that he told him he had been injured as a result of falling downstairs. Learning that defendant had left associates in his car which was parked at the entrance to the hospital, Sumner went down to check his story with that of the occupants of the car. He then discovered the unconscious woman in the rear seat of the machine. Returning to the reception room, he asked the defendant what had happened to his lady friend. The defendant replied that she was drunk. Sumner asked him if he had not been involved in an automobile accident, which the defendant emphatically denied. Upon being asked if his friend did not require medical treatment, he said, "No, she is just drunk".

After his treatment the defendant returned to the automobile and drove the ladies back to their apartment. Mrs. Michael was still unconscious. She never regained consciousness. Upon reaching the apartment house, the defendant took the injured woman in his arms and started to carry her upstairs. Mrs. Williams called for assistance from Mr. Don Cooper, who lived in the same apartment house. He helped the defendant carry the unconscious woman to her room where they placed her on the bed, and Cooper assisted in removing her jacket and some of her clothing. She was carried upstairs and her garments removed with great difficulty for the reason that she was unconscious and limp and both of her arms were broken. While Patricia Michael was being

prepared for bed, the defendant stood around in the room with very little to say. When Mr. Cooper asked him why he had not taken the injured woman to a physician for treatment he replied that, "The doctor wouldn't take her in".

Mrs. Williams then told the defendant she thought they should call a doctor. The defendant did not even suggest the name of a possible available physician. He rendered absolutely no assistance in procuring the attendance of a doctor. Finally, at the defendant's request Mrs. Williams took him home in her machine. She returned immediately and promptly called Doctor Henderson, who arrived at 8:30 that morning. He found Mrs. Michael unconscious and suffering from a compound fracture of the wrist, concussion of the brain and other serious injuries. She was at once removed to the county hospital where she subsequently died as a result of her injuries.

Doctor Lipp performed an autopsy on the body of Patricia Michael, ascertaining that she suffered an abrasion over the bridge of her nose, bleeding from both ears, a fracture of the right elbow, a compound fracture of the left wrist, contusions on the hips, hands and legs and a subdural hemorrhage of the brain.

In a conversation which subsequently occurred between the defendant, Mrs. Williams, and her mother, he was asked why Patricia Michael was not taken to the hospital for medical care, to which he replied, "I didn't think she was injured, because she walked up the bank between Mr. Costa and I, and she was laughing and talking." That was an untrue statement, as were many others which he made concerning the accident.

Upon the foregoing evidence the jury rendered a verdict finding the defendant guilty as charged.

There is an abundance of evidence in this case to warrant the conviction of the defendant of failing to render reasonable assistance, as required by section 482 of the Vehicle Code, to Patricia Michael who was injured while riding as a guest in his automobile. The specific offense with which the defendant was charged, and of which he was convicted, was a failure to "carry or make arrangements for the carrying of said Patricia Michael to a physician, surgeon or hospital for medical or surgical treatment, it being apparent that such treatment was necessary".

The record leaves little doubt that it was apparent from her condition after the accident occurred that Patricia Michael was seriously injured and that she required immediate medical attention. It is also evident that the defendant knew of her serious condition, or that, as a reasonable person, he should have known it and that he deliberately refrained from attempting to procure medical aid for her even though she had been taken to the very door of the emergency hospital. Not only did he fail to render necessary assistance to her, but he concealed his own identity and deliberately misrepresented her condition at the hospital and in his subsequent conversation with the mother of Mrs. Williams. The evidence adequately supports the charge of failing to render necessary assistance to a person who was injured in an automobile accident in violation of the provisions of section 482 of the Vehicle Code.

■ It is asserted that section 482 of the Vehicle Code does not require the rendering of assistance to one who is injured by an automobile unless the accident occurs by striking a pedestrian or injuring the driver or occupant of another vehicle with which the machine collides. In other words, it is claimed the statute does not require the driver of an automobile who is involved in a casualty other than a collision or the striking of a pedestrian to render assistance to a person who is injured while riding in his machine as a guest. We are of the opinion that is too narrow a construction of the statute in question. That limitation of the application of section 482 of the Vehicle Code would defeat, to a substantial extent, the very purpose for which it was enacted. The statute evidently was intended to require the furnishing of information by the driver of any vehicle involved in an automobile accident of any kind, in which another person is injured, so as to identify the driver and fix the responsibility therefor on the culpable party. It also requires the performance of certain humanitarian acts, such as the making of arrangements for necessary medical care for the injured person. In determining the purpose of the legislature in enacting that statute, it is necessary to construe together sections 480 and 482 of the Vehicle Code. Section 480 provides in part:

"The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately

stop such vehicle at the scene of such accident and shall fulfill the requirements of section 482 (a) hereof, . . . ''

Section 482 (a) reads:

*"The driver of any vehicle involved in an accident result-ing in injury to or death of any person* shall also give his name, address and the registration number of the vehicle he is driving, the name of the owner, and shall upon request and if available exhibit his operator's or chauffeur's license to the person struck or the driver or occupants of any vehicle collided with or shall give such information and exhibit such license to any traffic or police officer at the scene of the acci-dent *and shall render to any person injured in such accident reasonable assistance, including the carrying or the making arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary or if such carry-ing is requested by the injured person."*

Reading the portion of the preceding section which we have italicized for emphasis it will be readily seen that ''the driver of *any vehicle* involved in an accident [of any sort] resulting in injury to or death of any person . . . shall ren-der to any person injured *in such accident* reasonable assis-tance, including . . . the making [of] arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that such treatment is necessary''. That language clearly does not limit the performance of such acts to the drivers of auto-mobiles which strike and injure a pedestrian, or which are involved in a collision with other vehicles. It includes all machines which are involved in accidents of any nature what-ever in which another individual is injured or killed. If there is any doubt regarding the purpose of the legislature to include in that section the duties required of a driver of a vehicle which is involved in any sort of accident result-ing in injury or death of other individuals, whether riding as guests in the machine, walking on the highway or occupy-ing another automobile with which a collision occurs, the title to the act amending sections 480, 481, 482, etc., of the Vehicle Code (Stats. 1935, p. 2141, chap. 764) conclusively indicates that these sections were intended to have general application to all sorts of motor vehicle accidents, and were not intended to be restricted to the class of accidents only

which are conceded by the appellant. The title to the act amending those sections reads:

"An act to amend sections 480, 481, 482, . . . of the Vehicle Code . . . *relating to accidents involving motor vehicles, the duty of drivers of such vehicles to stop, render aid and give certain information, . . .*"

There is no merit in appellant's contention that the provisions of section 482 of the Vehicle Code, under which he was convicted, exclude the necessity of rendering reasonable assistance, by providing for medical care for a person who is seriously and apparently injured while riding as a guest of the driver when his machine is involved in an accident.

█ It is contended the court erred in failing to instruct the jury, on its own initiative, that section 482 of the Vehicle Code provides for several distinct offenses when the driver of a vehicle is involved in an accident in which a person is injured or killed, to wit: (1) giving the driver's name and address and the number of his machine, (2) giving the name of the owner of the automobile, (3) exhibiting to the person injured or to the traffic officer his operator's license, when requested, and (4) rendering reasonable assistance to the injured person, including that of taking the injured person, or arranging to have such person taken to a physician, surgeon or hospital for medical care when it is apparent that such treatment is necessary, and that it was incumbent upon the jurors to all agree upon one and the same specific charge, as suggested in the cases of *People* v. *Scofield,* 203 Cal. 703 [265 Pac. 914], and *People* v. *Hoenschle,* 132 Cal. App. 387 [22 Pac. (2d) 777]. There is no merit in that assignment of error under the circumstances of this case.

The defendant was merely charged in the indictment with one distinct offense, namely, failing to render "reasonable assistance or any assistance, . . . and did not carry or make arrangements for the carrying of said Patricia Michael to a physician, surgeon or hospital for medical or surgical treatment, it being apparent that such treatment was necessary". The cause was tried on the theory that the only violation of the statute with which the defendant was charged was his failure to render reasonable assistance to procure necessary medical care for Patricia Michael. The evidence shows with-

out conflict that there was no occasion or demand for the defendant to give to the injured person or to traffic officers his name and address or the number of his machine. Those other specific offenses included in the statute were not involved in this indictment or trial. In the court's charge the indictment was read to the jury and the jury were fully and fairly instructed regarding every essential element of failing to render reasonable assistance by providing the injured person with medical aid. The jury were not requested to consider, and had no opportunity of considering, any other offense than that of failing to furnish necessary medical assistance to the injured person. It is clear that all jurors necessarily must have agreed that the defendant was guilty of failing to render necessary assistance to Patricia Michael by omitting to provide her with medical care when it was apparent that she was then in immediate need of professional treatment for her serious injuries.

The judgment and the order are affirmed.

Pullen, P. J., concurred.