[Civ. No. 35503. Second Dist., Div. Four. Feb. 18, 1970.]

JOE H. BAILEY, Petitioner, v.
THE SUPERIOR COURT OF VENTURA COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Richard E. Erwin, Public Defender, and Donald G. Griffin, Deputy Public Defender, for Petitioner.

Woodruff J. Deem, District Attorney, and James R. Moore, Deputy District Attorney, for Respondent and for Real Party in Interest.

## OPINION

**ALARCON, J. pro tem.**\*—Petitioner seeks to restrain respondent court from proceeding against him upon an information charging him with violating the "hit and run" provisions of Vehicle Code, section 20001.[1]

---

\*Assigned by the Chairman of the Judicial Council.

[1] Vehicle Code, section 20001, provides:

"The driver of any vehicle involved in an accident resulting in injury to any person, other than himself, or death of any person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004.

"Any person failing to comply with all the requirements of this section under such circumstances is guilty of a public offense and upon conviction thereof shall be punished by imprisonment in the state prison for not less than one year nor more than five years or in the county jail for not to exceed one year or by fine of not to exceed five thousand dollars ($5,000) or by both."

Section 20004 is not relevant to this case. Section 20003 provides: "The driver of any vehicle involved in an accident resulting in injury to or death of any person shall also give his name, address, the registration number of the vehicle he is driving, the name of the owner, and upon request and if available exhibit his driver's license to the person struck or the driver or occupants of any vehicle collided with or shall give such information and exhibit his license to any traffic or police officer at the scene of the accident and shall render to any person injured in the accident reasonable assistance, including the carrying or the making arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if such carrying is requested by the injured person."

The accident giving rise to the charges[2] occurred on May 19, 1969. Following the preliminary hearing, defendant was held to answer. He entered a plea of not guilty to the information and trial was set for October 14, 1969. On the latter date, on defendant's motion, the court allowed withdrawal of the not guilty plea. Upon the filing of a first amended information on October 14, 1969, defendant, relying upon *Byers* v. *Justice Court,* 71 Cal.2d 1039 [80 Cal.Rptr. 553, 458 P.2d 465], decided on September 16, 1969, filed a demurrer upon grounds that the facts stated therein did not constitute public offenses because the alleged non-compliance by defendant with section 20001 was excused by law, and that as applied to defendant the provisions of section 20001 were unconstitutional as of May 19, 1969, because they violated his privilege against self-incrimination. Upon the demurrer being overruled, defendant moved to set aside the information pursuant to the provisions of Penal Code, section 995. This motion was denied and defendant now seeks a writ of prohibition.

From the evidence received at the preliminary examination, the following facts appear. On May 19, 1969, at approximately 12 a.m. the vehicle driven by William Cornelius Swan, in which his wife was riding as a passenger, was travelling east on Los Angeles Avenue, between First and Second Streets, in Simi, California, at about 35 to 40 miles per hour. Mr. Swan testified that "the pickup truck turned suddenly in front of me, and after the accident I realized that it was a pickup truck. At the moment I couldn't see it, because of headlights, what it was"; that the other vehicle was about 20 feet in front of him when its driver made the turn and that his vehicle collided with the right front of the truck. This is the entire description of the accident, with the exception of a slight clarification upon cross-examination of Mr. Swan when defense counsel asked: "I gather, Mr. Swan, from what you say, this pickup truck turned to its left in front of you, is that correct?" Mr. Swan answered: "Yes, he made a left turn in front of me."

Mr. Swan testified that, after the impact, he got out of his car and looked towards the pickup which was about 10 feet away at that time. He saw the defendant standing about halfway between himself and the truck. Mr. Swan then realized that his own foot was broken and sat down in his car. Bystanders arrived and one of them placed some bandages on his forehead which was "bleeding pretty badly" and made him lie down in the front seat of the car. He testified that his wife was badly injured, suffering various con-

---

[2]Involved in the collision was a vehicle driven by William Cornelius Swan in which his wife, Brelma Edith Swan, was a passenger; both were injured. The information contains two counts, each charging a violation of section 20001 in that defendant, being the driver of a vehicle involved in an accident resulting in injury failed to stop such vehicle at the scene and give the information required by section 20003 or to render or offer to render aid to the injured, count one relating to Mr. Swan and count two to Mrs. Swan.

tusions around the face. The two injured parties were subsequently taken to a hospital in an ambulance. There is no indication as to who called the ambulance. Mr. Swan testified that he had "no conversation with the defendant whatsoever" and that defendant did not in any way assist him.

A highway patrol officer arrived at the scene and observed the two vehicles which had been involved in the accident,—a '59 Ford Pickup and a '61 Chrysler hardtop. He checked the registration on the pickup which indicated that it was registered to a Joe H. Bailey in Simi. He inquired but no such person was present at that time, and people at the scene reported that the driver of the pickup had left. On the afternoon of May 19, an officer of the highway patrol had a conversation with defendant at the latter's home in Simi. At first defendant denied driving the pickup truck and stated that he had just arrived home from Los Angeles approximately 50 minutes before the officer arrived at his home. He later admitted that he was driving the pickup in the early morning hours of May 19, 1969, and that he was in an accident. He told the officer that he had no recollection of leaving the scene of the accident and did not remember how he got home.

The Supreme Court, in *Byers* v. *Justice Court, supra,* 71 Cal.2d 1039, holds that the privilege against self-incrimination "is applicable when a driver of a motor vehicle involved in an accident is confronted with a statutory requirement to stop and divulge his identity and reasonably believes that compliance with the statute will result in self-incrimination." (P. 1047.) The court holds, however, that compliance with the statute there in question (Veh. Code, § 20002, subd. (a)) is not excused by the existence of the privilege since the privilege is satisfied by precluding prosecuting authorities from using information divulged in compliance therewith. The court, in enunciating this use-restriction rule for the first time in California, states that "we must, in order to fulfill our responsibility to protect the privilege against self-incrimination, hold that where compliance with section 20002 of the Vehicle Code would otherwise be excused by an assertion of the privilege, compliance is, as in other cases, mandatory and state prosecuting authorities are precluded from using the information disclosed as a result of compliance or its fruits in connection with any criminal prosecution related to the accident." (Pp. 1056-1057.)

In the *Byers* case, defendant was charged not only with violation of Vehicle Code section 20002, but with improper and unsafe passing in violation of section 21750 of the Vehicle Code, and there was a stipulation of counsel that the two alleged violations arose out of the same occurrence. Based upon this record, the Supreme Court held that the trial court correctly concluded that "at the time of the accident Byers had reasonable

ground to apprehend that if he stopped to identify himself as required by section 20002 of the Vehicle Code he would confront a substantial hazard of self-incrimination." (P. 1057.) The court states (p. 1058): "Byers had a reasonable basis for fearing that compliance with the 'hit-and-run' statute would produce incriminating evidence which could be used against him in a criminal prosecution. At the time of the accident, Byers' claim of privilege was not supported by then-controlling decisions. This court now holds that the privilege against self-incrimination is applicable to such a case, as Byers urges, but we also establish today for the first time restrictions on the use of information disclosed in compliance with the 'hit-and-run' statute, and on the basis of such restrictions, we hold that compliance with the statute is not excused by the existence of the privilege. . . . Byers did not expressly claim the privilege when he left the scene of the accident, but if he had stopped to do so, he would in the light of existing law thereby have rendered nugatory any claim of privilege." The court concluded that "it would be unfair to hold that although Byers correctly asserted that the Fifth Amendment privilege was applicable to the question of his compliance with the 'hit-and-run' statute he should have complied because of the use-restrictions which he could only have speculated might exist." Accordingly, the court affirmed the judgment of the superior court granting a writ of prohibition restraining further proceedings in the justice court on the count charging a violation of section 20002, subdivision (a), of the Vehicle Code.

Petitioner contends that, although the *Byers* case involved section 20002 of the Vehicle Code, "the clear import of the decision was that the rationale employed by the court was equally applicable to Vehicle Code section 20001"; that the evidence taken at the preliminary hearing shows that "petitioner made a sudden turn in front of the complaining witness' automobile, a prima facie violation of Vehicle Code Section 21801 (a)," thus presenting a basis for the claim of the privilege against self-incrimination; that petitioner, like the defendant in the *Byers* case, "could not have known of the doctrine of 'use-restrictions' announced by the Supreme Court by its decision of September 16, 1969, therefore petitioner, like Byers, cannot be punished for his alleged noncompliance with said statute."

The People contend that in this case the privilege against self-incrimination should not be a defense to section 20001, urging the theory that the state may condition the enjoyment of a benefit or privilege on the nonassertion of a constitutional right where the utility of imposing such a condition manifestly outweighs any resulting impairment of the constitutional right, citing *Bagley* v. *Washington Township Hospital Dist.,* 65 Cal.2d 499, 503-507 [55 Cal.Rptr. 401, 421 P.2d 409]. It is conceded that a somewhat simi-

lar argument made by the People with regard to section 20002 in *Byers* was rejected by the court "because there it was found that the purpose of section 20002 of the Vehicle Code could be achieved by a means unoffensive to the privilege against self-incrimination. The court in *Byers* found that the purpose of 20002 was merely the facilitation of civil recovery between property owners involved in non-injury traffic accidents." The People contend "that by virtue of the broader scope and weightier purposes of section 20001 of the California Vehicle Code the scales are shifted in favor of the state's right to condition the use of the highways as opposed to the individual's interest in the unimpaired enjoyment of the Fifth Amendment."

In *Byers* the court states (pp. 1048-1049): "Since compliance wth section 20002 of the Vehicle Code may require disclosures coming within the privilege against self-incrimination and since the purpose of that section is to protect property owners from financial loss by requiring drivers involved in accidents resulting in property damage to disclose their identities (*People v. Stansberry,* 242 Cal.App.2d 199, 203 [51 Cal.Rptr. 403]; *Miglierini v. Havemann,* 240 Cal.App.2d 570, 573 [49 Cal.Rptr. 795]), the present case exemplifies a conflict much discussed by commentators in recent years, the conflict between the individual's right to protection under the Fifth Amendment privilege against self-incrimination and the government's substantial interest in having citizens report or otherwise divulge information to effectuate various regulatory measures designed to promote the public welfare. . . .

"Obviously, 'it is imperative to effect an accommodation that will permit government to collect vitally needed information without impairing the purposes of the privilege.' " Such an acommodation was effected by adoption of the "use-restriction" rule.

In *People v. Jordan,* 214 Cal.App.2d 400, 402-403 [29 Cal.Rptr. 619], the court states: "The legislative purpose in enacting *20001* was to prevent the driver of the offending car from leaving the scene of the accident without furnishing the information as to his identity *and without rendering necessary aid to the injured person.*" (Italics added.) (See also, *People v. Scofield,* 203 Cal. 703, 707-708 [265 P. 914]; *People v. Kuhn,* 139 Cal.App.2d 109, 112 [292 P.2d 964]; *People v. Foreman,* 205 Cal.App.2d 485, 488 [22 Cal.Rptr. 925].) ▓ It is obvious that the purpose of this statute is twofold: (1) to furnish information, and ▓ to render reasonable assistance. (2) The various requirements of the statute are set forth in the conjunctive and omission to perform any one of the acts required constitutes the offense. (*People v. Jordan, supra,* p. 403; *People v. Cron,* 207 Cal.App.2d 452, 455 [24 Cal.Rptr. 587]; *People v. Kinney,* 28 Cal.App.2d 232, 239-240

[82 P.2d 203].) "A failure to perform any of the required acts is a separate offense." (*People* v. *Scofield, supra,* p. 710.)

It is our opinion that insofar as section 20001[3] requires the furnishing of information it is similar in its requirements and in its purpose to section 20002, subdivision (a), and that the rules set forth in *Byers* v. *Justice Court, supra,* are controlling. The privilege applies to the disclosure-of-information requirements of section 20001 if the individual seeking to avoid disclosure faces "substantial hazards of self-incrimination." The privilege, however, may not be asserted as a defense and compliance is mandatory because of the rule announced in *Byers* restricting the use by prosecuting authorities of the information supplied in any criminal prosecution related to the accident. Since the accident in the instant case occurred prior to the *Byers* decision, petitioner is in a position similar to that of Byers and, assuming that initially the circumstances in the present case justify invocation of the privilege,[4] fairness dictates that petitioner not be punished for failure to furnish the information required by section 20001. This conclusion, however, does not require the issuance of a writ of prohibition in this case.

Although petitioner stopped after the collision and was present at the scene for an unknown period of time, there is no question that he did not comply with any of the other requirements of the statute. Since omission to perform *any* of the acts required by the statute constitutes a violation thereof, even if petitioner cannot be held to answer for failure to furnish information, the failure to render assistance to the injured victims subjects him to prosecution under the statute.

We think that the portion of section 20001 which requires the driver of a vehicle to stop and render assistance is severable for purposes of determining the applicability of the privilege against self-incrimination.[5] This portion of the statute is no part of the information-gathering requirements

---

[3]All statutory references hereinafter are to the Vehicle Code unless otherwise specified.

[4]The People contend that "the denial of the 995 motion by the trial court constitutes an implicit finding that the preliminary transcript failed to recite facts sufficient to justify a finding that the defendant had 'reasonable grounds' to believe that compliance with section 20001 would result in self-incrimination . . ." We find it unnecessary to discuss or determine this point in view of the conclusions reached in this decision.

[5]*Compare Grosso* v. *United States,* 390 U.S. 62 [19 L.Ed.2d 906, 88 S.Ct. 709], which involved a conviction for failure to pay an excise tax imposed on wagering. The court observed that those liable for payment of the excise tax were required to submit each month a "return" expressly designed for use only of those engaged in the wagering business and that the return had to accompany the tax payment; that nothing in the statutes or regulations contemplated payment of the tax without submission of the return. The court states that, although failure to pay the excise tax and to file a return are separately punishable, the two obligations must be considered inseparable for purposes of measuring the hazards of self-incrimination which might stem from payment of the excise tax, and concluded that the validity under the

or purposes. The purpose and propriety of this portion of the statute are apparent. It was enacted for the protection of persons injured in an accident, and was designed to prohibit drivers, under pain of punishment, from leaving such persons in distress and danger for want of proper medical or surgical treatment. Reasonable and prompt assistance may prevent aggravation of or further injuries, or may save a life. These are but humanitarian acts required to be performed by all drivers of vehicles involved in accidents causing injuries, whether or not they are responsible for the accident. (See, *People* v. *Kaufman,* 49 Cal.App. 570, 573 [193 P. 953]; *People* v. *McKee,* 80 Cal.App. 200, 203-204 [251 P. 675]; *People* v. *Rallo,* 119 Cal. App. 393, 397 [6 P.2d 516]; *People* v. *Kinney, supra,* 28 Cal.App.2d 232, 237; *Karl* v. *C. A. Reed Lbr. Co.,* 275 Cal.App.2d 358, 361 [79 Cal. Rptr. 852].)

 It is our conclusion that the privilege against self-incrimination does not apply to that portion of section 20001 which requires the driver to stop and render assistance to the injured. "The privilege against self-incrimination applies to evidence of 'communications or testimony' of the accused, but not to 'real or physical' evidence derived from him. [Citations.]" *(People* v. *Ellis,* 65 Cal.2d 529, 533 [55 Cal.Rptr. 385, 421 P.2d 393].) In *Schmerber* v. *California,* 384 U.S. 757 [16 L.Ed.2d 908; 86 S.Ct. 1826], which involved the taking of a blood test, the United States Supreme Court states (384 U.S. at pp. 763-765 [16 L.Ed.2d at pp. 916-917]): "It is clear that the protection of the privilege reaches an accused's communications, whatever form they might take, and the compulsion of responses which are also communications, for example, compliance with a subpoena to produce one's papers. [Citation.] On the other hand, both federal and state courts have usually held that it offers no protection against compulsion to submit to fingerprinting, photographing, or measurements, to write or to speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture. The distinction which has emerged, often expressed in different ways, is that the privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it. . . . Since the blood test evidence, although an incriminating product of compulsion, was neither petitioner's testimony nor evidence relating to some communicative act or writing by the petitioner, it was not inadmissible on privilege grounds."

Constitution of criminal prosecutions for wilful failure to pay the excise tax may properly be determined only after assessment of the hazards of incrimination which would result from "literal and full compliance" with all of the statutory requirements. It was held, accordingly, that petitioner could claim the privilege as to the "entire tax payment procedure." (390 U.S. at pp. 65-66 [19 L.Ed.2d at pp. 910-911].)

In holding that a post-indictment lineup involved no violation of an accused's privilege against self-incrimination, the court, in *United States* v. *Wade,* 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], states (388 U.S. at pp. 221-222 [18 L.Ed.2d at pp. 1154-1155]): "Neither the lineup itself nor anything shown by this record that Wade was required to do in the lineup violated his privilege against self-incrimination. . . . We have no doubt that compelling the accused merely to exhibit his person for observation by a prosecution witness prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have. It is no different from compelling Schmerber[6] to provide a blood sample or Holt[7] to wear the blouse, and, as in those instances, is not within the cover of the privilege. Similarly, compelling Wade to speak within hearing distance of the witnesses, even to utter words purportedly uttered by the robber, was not compulsion to utter statements of a 'testimonial' nature; he was required to use his voice as an identifying physical characteristic, not to speak his guilt."

*Gilbert* v. *California,* 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951], established the admissibility of handwriting exemplars, the court stating (388 U.S. at pp. 266-267 [18 L.Ed.2d at pp. 1182-1183]): "One's voice and handwriting are, of course, means of communication. It by no means follows, however, that every compulsion of an accused to use his voice or write compels a communication within the cover of the privilege. A mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside its protection."

■ By analogy to the above cited cases, and California decisions in which the privilege has been held to be inapplicable,[8] it is clear that section 20001, insofar as it requires a driver involved in an accident to stop and render assistance, does not compel incriminating disclosures in violation of

---

[6]*Schmerber* v. *California,* 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826].

[7]*Holt* v. *United States,* 218 U.S. 245 [54 L.Ed. 1021, 31 S.Ct. 2].

[8]*People* v. *Duroncelay,* 48 Cal.2d 766, 770 [312 P.2d 690]; *People* v. *Lane,* 240 Cal.App.2d 634, 636-640 [49 Cal.Rptr. 712]; *People* v. *Bustos,* 247 Cal.App.2d 422, 424-425 [55 Cal.Rptr. 603] (blood test); *People* v. *Lopez,* 60 Cal.2d 223, 243-244 [32 Cal.Rptr. 424, 384 P.2d 16]; *People* v. *Williams,* 255 Cal.App.2d 653, 663 [63 Cal.Rptr. 501] (police lineup); *People* v. *Sudduth,* 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401]; *People* v. *Conterno,* 170 Cal.App.2d Supp. 817, 825-826 [339 P.2d 968] (breath analysis test); *People* v. *Ellis, supra,* 65 Cal.2d 529, 533-536 (voice identification); *People* v. *Matteson,* 61 Cal.2d 466, 469 [39 Cal.Rptr. 1, 393 P.2d 161] (handwriting exemplars); *People* v. *Sowers,* 204 Cal.App.2d 640, 644-645 [22 Cal.Rptr. 401] (fingerprints); *Whalen* v. *Municipal Court,* 274 Cal.App.2d 809, 812 [79 Cal.Rptr. 523] (field sobriety test). See also, Witkin, Cal. Evidence (2d ed. 1966), section 905, page 838.

the privilege against self-incrimination. Said requirements were not designed to produce evidence of any kind, and to the extent that compliance may reveal physical characteristics or expose a driver to visual identification, this is not testimonial compulsion upon, or enforced communication by, such driver within the privilege.

Since compliance with that portion of section 20001 which requires the driver to stop and render assistance does not violate the privilege against self-incrimination, and as the evidence is amply sufficient to show reasonable or probable cause to hold petitioner to answer for violation of this requirement, the within petition must be denied.

The alternative writ of prohibition heretofore issued is discharged. The petition for a peremptory writ of prohibition is denied.

Kingsley, Acting P. J., and Dunn, J., concurred.

Petitioner's application for a hearing by the Supreme Court was denied April 15, 1970. Peters, J., and Sullivan, J., were of the opinion that the petition should be granted.