Opinion
FREDMAN, J.
Earl Chris Laursen (defendant) appeals from his conviction by a jury of violation of Vehicle Code sections 23101 (reckless driving) and 20002, subdivision (a) (hit-run, property damage), in the San Luis Ob-ispo County Municipal Court.
Defendant and the asserted victims, Amador Rubio, father, and Mark Rubio, son, had been involved in a dispute regarding defendant’s right to access to an easement for a water well and its associated equipment. The dispute was the subject of a civil action between the defendant and the Rubios. On April 1, 1984, defendant drove a Ford Ranchero vehicle to the site. A verbal altercation developed between him and Amador Rubio. Ama-dor Rubio told the defendant not to leave, that his son had gone to call the sheriff.
The defendant started his car and backed into Mark Rubio’s Volkswagen, parked a few feet away. The Ranchero then accelerated forward, striking *Supp. 3 Amador Rubio’s Volkswagen, parked about 10 to 15 feet in front of defendant. After striking both vehicles, the defendant left at a rapid rate of speed. He neither reported the incident to any law enforcement agency, nor left any means of identifying himself with either of the Rubios as required by Vehicle Code section 20002, subdivision (a). The defendant was charged with, and acquitted of, Penal Code section 245, subdivision (a)—assault with a deadly weapon.
I.-IIL*

IV.

Was There an “Accident” Within the Meaning of Vehicle Code Section 20002, Subdivision (a)?

Defendant contends that an “accident” did not occur within the meaning and intent of Vehicle Code section 20002, subdivision (a).[1] He claims that an “accident,” by definition, cannot be the result of an intended act. The property damage inflicted here being purposeful on defendant’s part, he claims that application of the statute to include intentional acts renders the section unconstitutionally vague.
At trial, defendant admitted that he “pushed” one Rubio vehicle back some distance and struck the other, while clearing his own vehicle to effect an “escape” from the wrath of the Rubios. Amador Rubio had to jump from the path of defendant’s vehicle to avoid being run down.
*Supp. 4 The Legislature has not defined the term “accident” in its Vehicle Code context. Prior to 1965, the section read: “(a) The driver of any vehicle which collides with any vehicle which is unattended, etc. ...” (Italics added.) Without explanation Statutes 1965, chapter 872, section 3, amended the section to read: “(a) The driver of any vehicle involved in an accident resulting in damage, etc. . . .” (Italics added.) This amendment conformed the property damage statute to those relating to injury and death. The requirement that the “victim” vehicle be unattended has been eliminated.
Dictionary sources have defined the word “accident” in relation to its several general meanings.[2]
People v. Green (1950) 96 Cal.App.2d 283 [215 P.2d 127], cited by defendant, decided the issue of whether or not the injury to a passenger who jumped from a vehicle triggered the mandatory reporting requirements of then section 482, subdivision (a), a predecessor reporting statute.
The court in Green took a broad view of the meaning of the statute, holding that the injuries to the victim required application of the mandatory assistance provisions and that an “accident” in fact occurred within the meaning of the Vehicle Code provisions. The Green court relied on People v. Kinney (1938) 28 Cal.App.2d 232, 237 [82 P.2d 203], another case involving injury to a passenger. The court there stated: “It is asserted that section 482 of the Vehicle Code does not require the rendering of assistance to one who is injured by an automobile unless the accident occurs by striking a pedestrian or injuring the driver or occupant of another vehicle with which the machine collides. In other words, it is claimed the statute does not require the driver of an automobile who is involved in a casualty other than *Supp. 5 a collision or the striking of a pedestrian to render assistance to a person who is injured while riding in his machine as a guest. We are of the opinion that is too narrow a construction of the statute in question. That limitation of the application of section 482 of the Vehicle Code would defeat, to a substantial extent, the very purpose for which it was enacted. The statute evidently was intended to require the furnishing of information by the driver of any vehicle involved in an automobile accident of any kind in which another person is injured, so as to identify the driver and fix the responsibility therefor on the culpable party.” (Italics added.)
The appellate courts of other jurisdictions have addressed the same issue as presently faces us.
In State v. Smyth (1979) 121 R.I. 188 [397 A.2d 497], the Supreme Court of Rhode Island posited the issue—“We are asked to decide whether a defendant who intentionally drives his truck into the rear of an automobile, causing personal injury to the occupants of that automobile, and then departs the scene without identifying himself or rendering aid, can be convicted of leaving the scene of an accident under GL 1956 (1968 Reenactment) § 31-26-1.” For the purpose of this discussion, the provisions of the Rhode Island statute are akin to the California section under scrutiny.
The Rhode Island court reviewed the literature and case precedents defining the word “accident” in various contexts—workers’ compensation, insurance policies, and penal statutes, etc.
The court reasoned, in reaching its conclusion, that the statute’s reporting requirements should not depend solely on the mental state of the actor involved in a vehicular collision. “From the viewpoint of the perpetrator of an intentional act, the act is surely not an accident within the more common definition of the term. But from the perspective of the injured victim, the primary beneficiary of the statute, he or she has been involved in an accident and needs the same protections afforded other highway casualties. Therefore, we believe that the legislature intended the term ‘accident’ to include all automobile highway collisions—intentional as well as unintentional— where personal injury occurs.”
In State v. Liuafi (1981) 1 Hawaii App. 625 [623 P.2d 1271], the Intermediate Court of Appeals of Hawaii dealt with a similar issue. The defendant was convicted of attempted murder and of failure to render assistance to a person injured in an “accident.” He asserted that his conviction of attempted murder by vehicle precluded conviction for failing to render assistance. The attempted murder involved a volitional act on his part, and *Supp. 6 such an act did not come within the intended legislative meaning when defining the duties of a driver in an “accident.”
The Hawaii court relied primarily on dictionary definitions of the term “accident,” and concluded that the use of that word in the statute excluded the events which transpired in the case before them. They affirmed the attempted murder conviction and vacated the judgment for failing to render assistance.
More recently, the Supreme Court of Oregon was called upon to decide a similar issue in State v. Parker (1985) 299 Ore. 534 [704 P.2d 1144], affirming the decision of the Oregon Court of Appeals (1984) 70 Ore.App. 397 [689 P.2d 1035]. The facts involved a defendant charged with intentional damage of another’s motor vehicle and with failure to report the “accident.” The defendant claimed, as does defendant here, that his failure to report the “accident” was inconsistent with the initial criminal mischief charge, and that the former pleading was demurrable. The Oregon and California statutes are basically similar regarding reporting requirements after an “accident.”
The Oregon court noted the Liuafi decision and rejected its reasoning, saying, “When taken in its natural and obvious sense, ‘accident’ can mean ‘if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens.’ Black’s Law Dictionary, supra.[3] This sense of the word harmonizes well with the purpose for enacting the statute which was to establish a comprehensive body of law covering all aspects of traffic on Oregon highways. . . . From this all-encompassing perspective, it seems logical that the legislature would intend to use the broadest sense of the word ‘accident’; one which includes intentional as well as unintentional conduct. To interpret ‘accident’ so as to include only unintentional conduct would exclude some of the situations for which the law was enacted. As the Court of Appeals stated, ‘[I]t makes no sense to read the statute as imposing duties on persons who negligently injure others or damage their property but as absolving persons who do so intentionally from any such duties.’ 70 Or.App. at 402, 689 P.2d at 1038.”
In comparing these diverse views from jurisdictions half a world apart, we consider the Rhode Island and Oregon cases to be better reasoned and consonant with the import of the two California cases cited, People v. Green and People v. Kinney, supra. The intended benefit of the statute flows to the victim, not to the perpetrator. In the case now before us, we conclude *Supp. 7 that the California Legislature intended to protect the victims of property damage incidents as well as those suffering personal injury. Further, it is clear that the lawmakers intended to extend the application of the provisions of section 20002, subdivision (a), to volitional, intended, and purposeful acts, as well as those resulting from unintentional or negligent conduct.
Where terms used in a penal statute have a commonly accepted meaning or are understood by persons of ordinary intelligence, they pass constitutional muster. (1 Witkin, Cal. Crimes (1963) Introduction, § 26, p. 29; People v. Calimee (1975) 49 Cal.App.3d 337, 341 [122 Cal.Rptr. 658]; People v. Kirk (1975) 49 Cal.App.3d 765, 769 [122 Cal.Rptr. 653]; Los Angeles v. Silver (1979) 98 Cal.App.3d 745, 751 [159 Cal.Rptr. 762].)
Here, a person of normal intelligence and understanding would and should recognize that his damaging of property of another by either intended or unintended use of a motor vehicle requires a response in compliance with section 20002, subdivision (a). Defendant’s contentions represent the strained response of a structured and legally trained mind rather than the common understanding of lay persons who use the public highways subject to the reporting requirements of the Vehicle Code. Defendant was required to make the statutory response or risk the criminal sanctions imposed by law for his failure to do so.
V.-IX.*

X.

Conclusion

The judgment is affirmed. The matter is remanded to the municipal court for carrying out any portion of the sentence stayed pending the appeal.
Woolpert (H. E.), Acting P. J., concurred.

See footnote, ante, page Supp. 1.

All subsequent section references are to the Vehicle Code unless otherwise indicated.
Section 20002, subdivision (a), provides in part: “(a) The driver of any vehicle involved in an accident resulting in damage to any property, including vehicles, shall immediately stop the vehicle at the scene of the accident and shall then and there do one of the following:
“(1) Locate and notify the owner or person in charge of such property of the name and address of the driver and owner of the vehicle involved. . . .
“(2) Leave in a conspicuous place on the vehicle or other property damaged a written notice giving the name and address of the driver and of the owner of the vehicle involved and a statement of the circumstances thereof and shall without unnecessary delay notify the police department of the city wherein the collision occurred or, if the collision occurred in unincorporated territory, the local headquarters of the Department of the California Highway Patrol.
“Any person failing to comply with all the requirements of this section is guilty of a misdemeanor and upon conviction thereof shall be punished by imprisonment in the county jail for not to exceed six months or by a fine of not to exceed one thousand dollars ($1,000) or by both.”

Webster’s Ninth New Collegiate Dictionary (1985) defines “accident” as: “l.a: an unforeseen and unplanned event or circumstance b: lack of intention or necessity: Chance (met by chance rather than design) 2.a: an unfortunate event resulting esp. from carelessness or ignorance b: an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured but for which legal relief may be sought.
Black’s Law Dictionary (5th ed. 1979) states: “In its most commonly accepted meaning, or in its ordinary or popular sense, the word may be defined as meaning: a fortuitous circumstance, event, or happening; an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected by the person to whom it happens; an unusual, fortuitous, unexpected, unforeseen, or unlooked for event, happening or occurrence; an unusual or unexpected result attending the operation or performance of a usual or necessary act or event; chance or contingency, fortune; mishap; some sudden or unexpected event taking place without expectation, upon the instant, rather than something which continues, progresses or develops; something happening by chance; something unforeseen, unexpected, unusual, extraordinary or phenomenal, taking place not according to the usual course of things or events, out of the range of ordinary calculations; that which exists or occurs abnormally, or an uncommon occurrence. . . .” (Italics added.)

See footnote 2, ante.

See footnote, ante, page Supp. 1.