[No. H008211. Sixth Dist. Dec. 30, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
MONCERRATE JIMENEZ, Defendant and Appellant.

## COUNSEL

Steven L. Whiteside, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald S. Matthias and Martin S. Kaye, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CAPACCIOLI, Acting P. J.**—Defendant was convicted of violating his duty to stop and report an injury-producing accident (Veh. Code, § 20001, subd. (b)(1)), assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)), exhibition of a deadly weapon (Pen. Code, § 417, subd. (a)(1)), possession of heroin (Health & Saf. Code, § 11350) and two counts of perjury (Pen. Code, § 118). The jury found that defendant had inflicted great bodily injury within the meaning of Penal Code section 12022.7 in connection with the assault count. He was sentenced to nine years and four months in state prison. On appeal, defendant asserts that (1) the court improperly excused a juror for cause, (2) the perjury instruction improperly removed the materiality issue from the jury, (3) defendant could not properly be convicted of two counts of perjury, (4) Penal Code section 654 precluded punishment for both counts of perjury, (5) the failure to stop and report conviction must be reversed because there was no evidence of an "accident," (6) the court prejudicially erred by failing to instruct the jury on the definition of "accident" and (7) the court prejudicially erred by failing to give a special

unanimity instruction. For the reasons expressed below, we modify and affirm the judgment.

## FACTS

Elizabeth L. met defendant when they both worked at Burger King in October 1989. Defendant gave her a ride home from work several times in an old brown wood-paneled station wagon in November and December 1989. On New Year's Eve one of Elizabeth's coworkers at Burger King had a party and Elizabeth went to the party with another Burger King employee. Defendant saw Elizabeth at the party and the two of them argued. The argument ended with defendant slapping Elizabeth across the face. Elizabeth quit working at Burger King shortly after the New Year's Eve party and took a job as a bartender at a bar called "El Paso" in San Jose. A few days later defendant came into the bar and told Elizabeth that he was taking her home. Elizabeth refused and the bar's bouncer intervened when defendant persisted. Defendant left the bar. On January 11, 1990, Elizabeth was tending bar at El Paso. Her shift ran from 7 p.m. to 2 a.m. Her sister Olivia was also there and Elizabeth had arranged for Olivia to take her home that evening. About 1 a.m. Elizabeth saw defendant in the bar. Defendant said that he was going to take her home. Elizabeth refused. Defendant persisted. Elizabeth told him that her sister was taking her home. Elizabeth stopped work early because she was nervous. Elizabeth, her sister Olivia and Olivia's friend Raul left the bar at approximately 1:45 a.m. on January 12 and went out to Raul's car. Raul's car was parked across the street from the bar. Elizabeth got into the front passenger seat and Olivia got into the driver's seat. Raul got into the back seat. As she was putting her seat belt on, Elizabeth saw defendant running across the street towards them. Defendant hit the windshield of Raul's car with a tire iron and cracked it. He also hit and broke the front and back side windows on the driver's side of the car. Olivia quickly started the car and drove away. As they were driving to Elizabeth's residence, they felt something hit them from behind. Elizabeth unbuckled her seat belt and turned around so she could see what was behind them. She saw defendant behind them driving his station wagon with his lights off. Defendant hit their car with his car again. Elizabeth was thrown against the front dash and suffered a broken ankle and lacerations which required 25 stitches.

Defendant was charged by information with failure to stop and report (Veh. Code, § 20001, subd. (b)(1)), assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)) and exhibition of a deadly weapon (Pen. Code, § 417, subd. (a)(1)). It was further alleged that he had inflicted great bodily injury on Elizabeth within the meaning of Penal Code section 12022.7 in the

commission of the assault. Defendant was brought to trial. At this initial trial, defendant testified on his own behalf. He denied committing the offenses. He testified that (1) he had never driven a brown station wagon and (2) he had left San Jose for Mexico in late December 1989 and had not returned until March 29, 1990. The jury was unable to reach a unanimous verdict and a mistrial was declared.

Defendant was then charged by information with two counts of perjury (Pen. Code, § 118) for his testimony at the initial trial and the two informations were consolidated.[1] At the subsequent jury trial defendant was convicted of all five counts and the allegation that he had caused great bodily injury was found true. Defendant pleaded guilty to an unrelated narcotics count. He was sentenced to nine years and four months in state prison.

## DISCUSSION

### A. *Excusal of Prospective Juror*

The court conducted the voir dire of the prospective jurors. Prospective Juror Barreras told the court that she used to work with juvenile delinquents. She said: "I guess I have to say that looking at people's background and what makes things happen, it is a very difficult thing for me to say whatever I do here will be proven to be completely, because it would be very hard for me to judge somebody and feel any doubt. If I felt any doubt, I would just have to be honest and say I will be as fair as I can and as honest as I can, but—" The following exchange then occurred. "Q [The Court]: You think that—[¶] A [Ms. Barreras]: I have so much background with people in jails, because I work with juvenile delinquents and—[¶] Q: So you are telling us as nicely as you can that you have a little bit of a prejudice, and prejudice is not necessarily a bad word, but it just means you are prejudging and somebody—[¶] A: It is not a pre-judgment. I just feel like I cannot. I have to see that they are really guilty before I can. [¶] Q: You feel that you would have the district attorney what we call run an extra lap, that would be appropriate? [¶] A: Yes. [¶] Q: I appreciate your candor, but on the basis of your responses, I will excuse you for cause on this case. [¶] Mr. Press [defense counsel]: I would object to Mrs. Barreras [being excused] for cause.[2] I ask to inquire further, if I may. [¶] The Court: Well, Mrs. Barreras, you indicated to us that you feel that as a result of your background in social work, if I can generalize, that you doubt your ability to be totally fair and

---

[1]We asked defendant to brief the propriety of the consolidation of the informations. Defendant conceded that the court did not err in consolidating the informations. We find that any error was harmless.

[2]The parties agree that defense counsel was not objecting to Mrs. Barreras for cause but was instead objecting to her *excusal* for cause.

impartial in this case; is that what you are telling me? [¶] Mrs. Barreras: What I am saying I don't feel that I would be unfair. What I am saying is that it would take a lot to prove to me that somebody really has done something, because I could not be left with a doubt. [¶] The Court: Well, you understand that the law requires that the district attorney prove each and every element beyond a reasonable doubt and to a moral certainty? [¶] Mrs. Barreras: What I am saying is with the experience I have had that I would feel a little prejudice because I have seen how the background has emphasis on how people act and what is okay for them and not, yes. [¶] The Court: So you feel that you would have a difficult time following the law as I state it to you because of your background dealing with disadvantaged or people charged with crimes? [¶] Mrs. Barreras: I believe I would follow the law as much as I could, but I feel there would be prejudice in leniency. [¶] The Court: I will excuse you, Mrs. Barreras. Thank you very much."

■ Defendant asserts that the trial court lacked the power to excuse Mrs. Barreras for cause in the absence of a challenge by one of parties. He contends that Code of Civil Procedure section 225 deprives the court of this power. Code of Civil Procedure section 225 provides that "[a] challenge is an objection made to the trial jurors that may be taken by any party to the action . . . ." "The duty to examine prospective jurors and to select a fair and impartial jury is a duty imposed on the court . . . ." (*People* v. *Mattson* (1990) 50 Cal.3d 826, 845 [268 Cal.Rptr. 802, 789 P.2d 983].) The trial court's duty to select a fair and impartial jury impliedly includes the duty to excuse a juror for cause when voir dire indicates that the juror cannot be fair and impartial. The trial court's duty to excuse such jurors is not obviated by the absence of a challenge by a party. We decline to hold that Code of Civil Procedure section 225 deprives trial courts of the power to perform their duties.[3]

■ Defendant argues that if the court had the power to excuse Mrs. Barreras it abused its discretion in finding cause to excuse her. "The qualification of a juror challenged for cause is a matter within the discretion of the trial court and is seldom a ground for reversal on appeal." (*People* v. *Morris* (1991) 53 Cal.3d 152, 183 [279 Cal.Rptr. 720, 807 P.2d 949]; Code Civ. Proc. § 230.) A prospective juror may be excused for cause when voir dire reveals that the juror is biased. (*People* v. *Williams* (1988) 199 Cal.App.3d 469, 477 [245 Cal.Rptr. 61].) " 'The question of whether a prospective juror has a prejudiced state of mind amounting to actual bias is ordinarily an issue of fact left to the sound discretion of the trial judge.' "

[3]Although we find that a trial court has the power to excuse a juror for cause in the absence of a challenge by either of the parties, we recognize that this is not the accepted practice in our trial courts and therefore caution courts to use this power sparingly. (Cf. *People* v. *Moore* (1923) 64 Cal.App. 328, 329 [221 P. 665].)

(*People* v. *Clay* (1984) 153 Cal.App.3d 433, 450 [200 Cal.Rptr. 269] quoting *People* v. *Earnest* (1975) 53 Cal.App.3d 734, 749-750 [126 Cal.Rptr. 107].) Accordingly, we look to the record of the court's voir dire of Mrs. Barreras to determine whether her statements supported the court's finding that she was biased. Mrs. Barreras expressly stated on voir dire that she would be prejudiced against the prosecution and towards leniency. ▇▇▇ ▇ ▇ ▇ These statements support the trial court's determination and therefore the court's excusal of Mrs. Barreras for cause was not an abuse of discretion.[4]

## B. *Instruction on Materiality of False Statements*

▇ Defendant asserts that the trial court committed reversible error when it instructed the jury that the allegedly perjurious statements were material. We find no reversible error. "Every person who, having taken an oath that he or she will testify . . . truly[,] . . . willfully and contrary to the oath, states as true any *material* matter which he or she knows to be false, and every person who testifies . . . under penalty of perjury . . . and willfully states as true any *material* matter which he or she knows to be false, is guilty of perjury." (Pen. Code, § 118, italics added.) False *testimony* in a judicial or legislative proceeding is "material" if that testimony "could probably have influenced the outcome of the proceedings . . . ." (*People* v. *Pierce* (1967) 66 Cal.2d 53, 61 [56 Cal.Rptr. 817, 423 P.2d 969].)

▇▇ ▇ ▇ ▇ Nearly a century ago the California Supreme Court held that the materiality of false testimony in a perjury prosecution is a question "of law for the court, and not of fact for the jury." (*People* v. *Lem You* (1893) 97 Cal. 224, 228 [32 P. 11].) In 1959 the California Supreme Court held that the giving of an instruction that certain statements were material as a matter of law was not prejudicial error. (*People* v. *Matula* (1959) 52 Cal.2d 591, 600 [342 P.2d 252].) The Supreme Court did not explain whether the instruction was not erroneous or merely not prejudicial. (*Ibid.*) As late as 1967, the California Supreme Court accepted without question in dicta that materiality in a perjury prosecution was a question of law for the court. (*People* v. *Pierce, supra,* 66 Cal.2d at p. 61.) In 1986, however, the California Supreme Court noted, in dicta, that the continuing validity of the proposition that materiality was a question of law for the court was doubtful in light of modern due process requirements. (*People* v.

---

[4]Defendant incorrectly asserts that Code of Civil Procedure section 223 requires the court to permit counsel to orally examine the prospective jurors. No such requirement exists. "[T]he court *may* permit the parties, upon a showing of good cause, to supplement the examination by such further inquiry *as it deems proper* . . . ." (Code Civ. Proc., § 223, italics added.) Defendant made no attempt to demonstrate good cause for further inquiry. Hence, the court did not err in refusing to permit defense counsel to examine Mrs. Barreras further. (*People* v. *Chaney* (1991) 234 Cal.App.3d 853, 863 [286 Cal.Rptr. 79].)

*Figueroa* (1986) 41 Cal.3d 714, 733 fn. 22 [224 Cal.Rptr. 719, 715 P.2d 680].)

In 1990 the California Supreme Court held that "in a perjury prosecution based on errors or omissions in disclosure statements required by the [Political Reform] Act, materiality[5] is an element of the offense, and must therefore be determined by the jury." (*People* v. *Hedgecock, supra,* 51 Cal.3d at p. 409.) However, the Supreme Court noted that "[w]e express no view whether in perjury prosecutions based on false testimony at a judicial or legislative proceeding the question of materiality is a jury issue." (*Ibid.*) Since the Supreme Court explicitly excluded the issue before us from its holding in *Hedgecock,* the Supreme Court's prior decision in *Lem You* continues to bind all lower courts. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455-456 [20 Cal.Rptr. 321, 369 P.2d 937].) Although it seems clear to this court that materiality is an element of perjury (cf. *U.S.* v. *Taylor* (N.D.Cal. 1988) 693 F.Supp. 828) whether the offense involves violation of the Political Reform Act or false testimony, we are precluded from so holding. (*Auto Equity Sales, Inc.* v. *Superior Court, supra,* 57 Cal.2d at p. 455.)[6]

## C. *Multiple Counts of Perjury*

█ Defendant was convicted of two counts of perjury for his testimony at his first trial that (1) he had never driven a brown station wagon and (2) he had left San Jose for Mexico in late December 1989 and had not returned until March 29, 1990. "[A] charge of multiple counts of violating a statute is appropriate only where the actus reus prohibited by the statute—the gravamen of the offense—has been committed more than once." (*Wilkoff* v. *Superior Court* (1985) 38 Cal.3d 345, 349 [211 Cal.Rptr. 742, 696 P.2d 134].) The actus reus prohibited by Penal Code section 118 is the making of

---

[5]The definition of materiality which applies to false testimony does not apply in perjury prosecutions under the Political Reform Act. A false statement or omission in a disclosure statement required by the Political Reform Act "is *material* if there is a substantial likelihood that a reasonable person would consider it important in evaluating (1) whether a candidate should be elected to, or retained in, a public office, or (2) whether a public official can perform the duties of office free from any bias caused by concern for the financial interests of the official or the official's supporters." (*People* v. *Hedgecock* (1990) 51 Cal.3d 395, 406-407 [272 Cal.Rptr. 803, 795 P.2d 1260], italics added.)

[6]Even if we were to find that the trial court erred in removing the issue of materiality from the jury, the error would not require reversal. In light of defendant's appellate concession that the removal of the materiality issue from the jury was harmless beyond a reasonable doubt and the absence of any dispute with respect to materiality at trial, the alleged error would not require reversal under the applicable error standard. (*People* v. *Hedgecock, supra,* 51 Cal.3d at p. 410; *People* v. *Odle* (1988) 45 Cal.3d 386, 410-411 [247 Cal.Rptr. 137, 754 P.2d 184].)

a false statement. (Pen. Code, § 118.) Since defendant made two separate false statements, he could properly be convicted of two counts of perjury.[7]

### D. *Multiple Punishment for Perjury*

■ Defendant asserts that Penal Code section 654 precluded imposition of punishment for both counts of perjury. We agree. ■ "The initial inquiry in any section 654 application is to ascertain the defendant's objective and intent. If he entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People* v. *Beamon* (1973) 8 Cal.3d 625, 639 [105 Cal.Rptr. 681, 504 P.2d 905]; see also *People* v. *Ratcliffe* (1981) 124 Cal.App.3d 808, 817 [177 Cal.Rptr. 627].) "The divisibility of a course of conduct depends upon the intent and objective of the actor, and if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one." (*People* v. *Bauer* (1969) 1 Cal.3d 368, 376 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398].) "The fact that one crime is technically complete before the other commenced does not permit multiple punishment where there is a course of conduct comprising an indivisible transaction." (*Id.* at p. 377.) " 'The defendant's intent and objective are factual questions for the trial court; . . . there must be evidence to support a finding the defendant formed a separate intent and objective for each offense for which he was sentenced. [Citation.]' " (*People* v. *Coleman* (1989) 48 Cal.3d 112, 162 [255 Cal.Rptr. 813, 768 P.2d 32] quoting *People* v. *Adams* (1982) 137 Cal.App.3d 346, 355 [187 Cal.Rptr. 505]; *People* v. *Ratcliffe*, *supra*, 124 Cal.App.3d at p. 818.)

■ Defendant's only apparent criminal objective for his two false statements was to exonerate himself on the three offenses for which he was being tried at the first trial. While it is true, as the Attorney General points out, that defendant's denial that he had ever driven a brown station wagon did not directly provide a defense to the exhibition of a deadly weapon count,[8] this statement occurred *after* defendant had already testified he had been in Mexico at the time of the three offenses so the second statement was

---

[7]Defendant asserts that since only one oath was taken only one count of perjury could be charged. This argument is absurd. The actus reus of perjury is not the taking of an oath. The elements of crimes are of three varieties: actus reus, mens rea and attendant circumstances. The requirement that the false statement be made while under oath is merely a requisite attendant circumstance like the requirement for first degree burglary that the structure entered be an inhabited dwelling. Defendant's argument is meritless.

[8]The evidence established that the same person had committed all three offenses. Therefore, defendant's attempt to establish a defense to the offenses involving the brown station

not *independent* but instead merely *supportive* of defendant's earlier alibi testimony. Since defendant's two statements did not have separate criminal objectives, the concurrent term imposed for the second perjury count (count 2B) must be stayed pursuant to Penal Code section 654.

### E. *Vehicle Code Section 20001 Violation*

#### 1. *Construction of the Statute; Sufficiency of the Evidence*

"The driver of any vehicle involved in an *accident* resulting in injury to any person, other than himself or herself, or in death of any person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004." (Veh. Code, § 20001, subd. (a), italics added.) The jury's verdict on the assault count established that defendant acted intentionally in causing the collision between the two vehicles. (*People* v. *Rocha* (1971) 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372].) ▮ Defendant asserts that since his conduct was intentional, he was not involved in an "accident" within the meaning of Vehicle Code section 20001, subdivision (a). He asserts that the use of the word "accident" in the statute excludes events which arise out of intentional acts. We do not agree. ▮ "The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law. [Citations.] In order to determine this intent, we begin by examining the language of the statute. [Citations.] But '[i]t is a settled principle of statutory interpretation that language of a statute should not be given a literal meaning if doing so would result in absurd consequences which the Legislature did not intend.' [Citations.] Thus, '[t]he intent prevails over the letter, and the letter will, if possible, be so read as to conform to the spirit of the act.'" (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420].)

▮ The broad legislative purpose behind the enactment of Vehicle Code section 20001 requires us to give the word "accident" its broadest possible meaning so as to extend the requirements of the statute to all injury-producing events involving vehicles. Vehicle Code section 20001 was enacted to benefit persons who are injured as a result of an incident involving a vehicle. (*Bailey* v. *Superior Court* (1970) 4 Cal.App.3d 513, 518-519 [84 Cal.Rptr. 436]; *Byers* v. *Justice Court* (1969) 71 Cal.2d 1039, 1054-1055 [80 Cal.Rptr. 553, 458 P.2d 465] vacated by the United States Supreme Court in *California* v. *Byers* (1971) 402 U.S. 424 [29 L.Ed.2d 9, 91 S.Ct. 1535].) The acts required by the statute are "*required to be performed*

wagon was also an indirect attempt to establish a defense to the exhibition count. Thus, the second statement, like the first statement, had but a single objective—the establishment of a defense to all three charges.

*by all drivers of vehicles involved in accidents causing injuries, whether or not they are responsible for the accident."* (*Bailey* v. *Superior Court, supra,* 4 Cal.App.3d at p. 521, italics added.) "The gravamen of a section 20001 offense . . . is not the initial injury of the victim, but leaving the scene without presenting identification or rendering aid." (*People* v. *Escobar* (1991) 235 Cal.App.3d 1504, 1509 [1 Cal.Rptr.2d 579].) The extension of the statute's requirements to "involved" drivers reflects the Legislature's intent that the statute should apply without regard to the state of mind or responsibility of the driver.

With the Legislature's intent in mind, we must next look at the language which the Legislature used to express this intent. ■ "Accident", as it is used in Vehicle Code section 20001, subdivision (a), refers to the injury-producing event in which the driver's vehicle is involved. "No all-inclusive definition of the word 'accident' can be given." (*Geddes & Smith, Inc.* v. *St. Paul Mercury Indemnity Co.* (1959) 51 Cal.2d 558, 563 [334 P.2d 881].) "In an etymological sense anything that happens may be said to be an accident and in this sense, the word has been defined as befalling a change; a happening; an incident; an occurrence or event." (Black's Law Dict. (5th ed. 1979) p. 14.) The more commonly accepted meaning of the word "accident" is an unforeseen, unplanned or unfortunate event. (Webster's 9th New Collegiate Dict. (1983) p. 49.) Defendant asserts that we must construe "accident" consistent with its "common" meaning so as to exclude events, such as this one, which are the result of intentional conduct. ■ If a penal statute is susceptible of more than one meaning, the statute must be construed in defendant's favor unless such a construction would be unreasonable, absurd or contrary to the legislative intent underlying the statute. (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 631 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420]; *People* v. *Davis* (1985) 166 Cal.App.3d 760, 766 [212 Cal.Rptr. 673]; cf. *People* v. *Pieters, supra,* 52 Cal.3d at pp. 898-899.) ■ The legislative intent underlying Vehicle Code section 20001 is to benefit persons who suffer injuries as a result of occurrences involving vehicles. A construction of the statute which would excuse those drivers who intended to cause an injury-producing occurrence from a duty imposed on all other involved drivers would produce the absurd result that drivers with the highest level of fault for the injury-producing occurrence could shirk their responsibilities with impunity while those drivers who were merely negligent or without fault were burdened with the statute's requirements. Because such a construction of the statute would be absurd, unreasonable and contrary to the law's purpose, we hold that Vehicle Code section 20001 applies to all drivers of vehicles involved in injury-producing events. "Accident" is used in Vehicle Code section 20001 to refer to an incident or event. Substantial evidence at trial established that defendant was the driver

of a vehicle involved in an injury-producing occurrence and that he failed to stop. This evidence supports defendant's conviction.

## 2. *Notice*

 "[A] criminal statute must give fair warning of the conduct that it makes a crime . . . ." (*Bouie* v. *City of Columbia* (1964) 378 U.S. 347, 350 [12 L.Ed.2d 894, 898, 84 S.Ct. 1697].) "A statute must be definite enough to provide a standard of conduct for those whose activities are proscribed . . . ." (*People* v. *McCaughan* (1957) 49 Cal.2d 409, 414 [317 P.2d 974].) Defendant claims that Vehicle Code section 20001 did not give him notice that his role as the driver of a vehicle involved in an injury-producing event required him to comply with the terms of the statute. We again disagree.

"The construction of a statute by judicial decision becomes a part of it, and the standard thus established may be sufficient to satisfy the requirement of due process of law that one be given adequate warning of an offense with which he may be charged." (*People* v. *Hallner* (1954) 43 Cal.2d 715, 721 [277 P.2d 393].) Vehicle Code section 20002, a companion statute to Vehicle Code section 20001, requires a driver whose vehicle is involved in an "accident" which produces property damage to stop and disclose his or her name and address. The requirements of Vehicle Code section 20002 have been held to apply to a driver who intentionally causes the damaging occurrence. (*People* v. *Laursen* (1985) 175 Cal.App.3d Supp. 1, 7 [222 Cal.Rptr. 122].) In *People* v. *Laursen*, the court held that the statute's use of the word "accident" extended to events which resulted from the driver's "volitional, intended, and purposeful acts, as well as those resulting from unintentional or negligent conduct." (*People* v. *Laursen, supra,* 175 Cal.App.3d Supp. at p. 7.) *Laursen* gave adequate notice to defendant that his role as the driver of a vehicle involved in an injury-producing occurrence required him to comply with the dictates of Vehicle Code section 20001.

## 3. *Self-incrimination*

 Defendant asserts that holding him criminally liable for his failure to comply with Vehicle Code section 20001 violates his Fifth Amendment right against self-incrimination. The statute requires the driver of a vehicle involved in an injury-producing "accident" to stop, provide his or her name and address and render assistance to the injured person. In *California* v. *Byers, supra,* 402 U.S. 424, the United States Supreme Court upheld California Vehicle Code section 20002 against an attack based on the Fifth

Amendment's guarantee against compelled self-incrimination.[9] The four-justice plurality found no Fifth Amendment infringement while a fifth justice, concurring in the judgment only, found that the risk of self-incrimination created by the statute was outweighed by the state's regulatory need for the information.[10] This court is bound by the decisions of the United States Supreme Court on federal constitutional issues. (Cf. *Auto Equity Sales, Inc.* v. *Superior Court, supra,* 57 Cal.2d at pp. 455-456.) We must therefore reject defendant's Fifth Amendment challenge to the statute.

### 4. *Instructions*

#### a. *Definition of "Accident"*

■ Defendant asserts that the trial court had a sua sponte duty to instruct the jury on the meaning of the word "accident." "The law is settled that when terms have no technical meaning peculiar to the law, but are commonly understood by those familiar with the English language, instructions as to their meaning are not required." (*People* v. *Anderson* (1966) 64 Cal.2d 633, 639 [51 Cal.Rptr. 238, 414 P.2d 366].) We hold herein that the Legislature used the word "accident" in Vehicle Code section 20001 to refer to an event or occurrence even though the word is commonly understood to refer to a narrower group of events. The absence of a jury instruction that "accident" had this special broader meaning could not possibly have harmed defendant since the jury could only have been more constrained by the common definition of "accident" than it would have been by the specialized meaning intended by the Legislature. Any error in failing to instruct the jury

---

[9]Vehicle Code sections 20001 and 20002 each require a driver involved in an "accident" to stop and disclose his or her name and address. (*California* v. *Byers, supra,* 402 U.S. at p. 426 [29 L.Ed.2d at p. 16]; Veh. Code, §§ 20001 and 20002.) Since the reporting requirements of the two statutes are analogous, the United States Supreme Court's resolution of the Fifth Amendment challenge to Vehicle Code section 20002 is dispositive with respect to defendant's Fifth Amendment challenge to Vehicle Code section 20001.

[10]The four-justice plurality opinion characterized the statute as "essentially regulatory" rather than criminal and found that the self-reporting requirement was essential to the statute's goal of promoting financial responsibility. (402 U.S. at p. 430 [29 L.Ed.2d at pp. 18-19].) Since the statute's reporting requirements did not pose a "substantial risk of self-incrimination" and the required information was not testimonial in nature, the statute did not violate the Fifth Amendment's guarantee against compelled self-incrimination. (*Id.* at pp. 431-434 [29 L.Ed.2d at pp. 19-21].) Justice Harlan concurred in the judgment only. He explained that the statute's self-reporting requirement posed "genuine risks of self-incrimination" but that application of the privilege against self-incrimination to negate the statute's requirements "threatens the capacity of the government to respond to societal needs with a realistic mixture of criminal sanctions and other regulatory devices." (*Id.* at pp. 448-453 [29 L.Ed.2d at pp. 28-32], fn. omitted.) Since the statute's reporting requirement was predicated on a regulated event which was not " 'inherently suspect' " and the information was sought for nonprosecutorial purposes, the state's requirement of a "minimal level of disclosure" did not violate the Fifth Amendment. (*Id.* at pp. 456-458 [29 L.Ed.2d at pp. 33-35].)

on the proper "technical" meaning of "accident" was harmless under any standard.

### b. *Unanimity*

Defendant also asserts that "the court committed prejudicial error in failing to instruct the jury that they must agree on which act constituted the 'accident'." This argument is utterly specious. The "accident" referred to by Vehicle Code section 20001 is not an "act" but an event which triggers consequences only if defendant was the driver of a vehicle involved in this event. The "act" prohibited by Vehicle Code section 20001 is not the "accident" but the failure of an involved driver to stop at the scene and present identification and render aid. (*People* v. *Escobar, supra,* 235 Cal.App.3d at p. 1509.) Unanimity instructions require the jury to agree on the specific act which forms the basis for their verdict. Since the act which formed the basis for defendant's conviction was his failure to comply with the reporting requirements of the statute, no special unanimity instruction was required with respect to the "accident."

### CONCLUSION

The judgment is hereby modified to reflect that the concurrent term imposed for the second perjury count (count 2B) is stayed pursuant to Penal Code section 654. The modified judgment is affirmed.

Elia, J., and Bamattre-Manoukian, J., concurred.

A petition for a rehearing was denied January 22, 1993, and appellant's petition for review by the Supreme Court was denied April 1, 1993. Mosk, J., and Kennard, J. were of the opinion that the petition should be granted.