Filed 11/17/21  P. v. Velasquez CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076088 |
| v. | (Super.Ct.No. FWV19001706) |
| IGNACIO VELASQUEZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Bridgid M. McCann, Judge.  Affirmed as modified.

Michael C. Sampson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

1

# FACTUAL AND PROCEDURAL HISTORY

## A. PROCEDURAL HISTORY

On February 14, 2020, an information charged final defendant and appellant Ignacio Velasquez with workers' compensation insurance fraud under Insurance Code section 1871.4, subdivision (a)(1) (counts 1 & 3), and perjury under oath under Penal Code section 118 (section 118) (counts 2 & 4).

On August 3, 2020, a jury convicted defendant as charged.

On November 6, 2020, the trial court granted defendant formal probation for a period of three years.

On November 9, 2020, defendant filed a timely notice of appeal. \

## B. FACTUAL HISTORY

On June 17, 2017, defendant reported getting injured at his place of employment, Tolle Nursery; he filed a workers' compensation claim to receive benefits. Defendant was placed on Total Temporary Disability (TTD). Defendant received two-thirds of his average weekly wages tax free. Pursuant to the applicable labor law, defendant received TTD for a maximum of two years from June 2017 through June 2019 in the amount of $25,900. During this time, defendant was also an employee of Glamour Transportation.

Although beneficiaries of workers' compensation payments are obligated to inform the insurance claims administrator if they collected income from other sources, defendant failed to do so. Defendant's insurance claims specialist, however, became suspicious that defendant was earning an income in addition to collecting benefits. The

2

specialist initiated a referral to the insurance company's special investigation unit. The investigations unit took depositions and hired a third party investigator.

On January 18, 2018, defendant testified under oath at a deposition. Defendant testified that he was not employed and was receiving TTD benefits. Defendant stated that his most recent employer was Tolle Nursey, where he worked full time as a delivery truck driver. He earned $16.50 an hour plus overtime. His last date of employment at Tolle Nursery was June 16, 2017.

Defendant also testified that he had previously worked for Glamour Transportation. His last day there was in May of 2017. Glamour Transportation paid defendant $1,500 per week as a lead driver. His hours varied from 40 to 60 hours a week. He believed that he was still on the roster at Glamour Transportation. On March 19, 2018, defendant reviewed the transcript from his January 18, 2018, deposition and signed under penalty of perjury that it was true and accurate.

On April 21, 2018, a private investigator surveilled defendant from 6:00 a.m. to 9:30 p.m. The investigator started at defendant's home. He watched as defendant left his residence and followed defendant as he drove to a storage facility in Ontario. There, defendant parked his personal car and left in a Lincoln Navigator. Defendant drove about two hours to the Palm Springs International Airport, where he parked; he eventually drove the Navigator on to the tarmac area. Defendant then drove the Navigator back to the storage unit. The investigator did not see anyone but defendant drive the Navigator and did not see anyone get into the Navigator. Moreover, the investigator did not see defendant accept cash payment.

3

At the second deposition on July 2, 2018, defendant was duly sworn. Defendant confirmed that he was receiving TTD and denied any other sources of income. He testified that the last day he worked was June 16, 2017, at Tolle Nursery. Defendant denied that he worked anywhere else since that time. Although defendant confirmed that he was still an employee of Glamour Transportation, he stated that the last date he worked for them was May 31, 2017. When defendant was asked to clarify whether he provided driving services for Glamour Transportation or any other company, defendant denied that he had. Defendant stated that he had not received any type of compensation, including compensation "under the table," for services rendered to any transportation company.

Defendant admitted that he traveled outside of California within the last two years. He stated that in September 2017, he drove alone to Texas to get away for three days, in his personal vehicle. Then in November 2017, he again drove by himself for three days to Arizona. Defendant explained that he needed to get away because he was "confused and depressed." Defendant also drove to Las Vegas in September or October of 2017, to meet up with a friend. He stayed there for a couple of days in his truck.

At Glamour Transportation, defendant described his duties as touring with the artists and picking them up at airports. He testified that he last drove for Glamour Transportation on May 31, 2017. He denied that he had accompanied any friends or coworkers to any airports after that date. Defendant stated that he had been to Palm Springs for personal reasons. On August 1, 2018, defendant reviewed the transcript of

4

the deposition, and signed under penalty of perjury that his transcript was true and accurate.

In 2019, an investigator from the San Bernardino County District Attorney's office was assigned to investigate defendant's workers' compensation claim. On May 28, 2019, the DA investigator interviewed defendant at his residence. Defendant told the investigator that he last worked for Glamour Transportation on May 31, 2017. Defendant stated that he worked for Glamour Transportation six or seven times in 2017. Defendant specified that he went to Dallas for Marc Anthony's concerts, Las Vegas for the Latin Grammy awards, and Phoenix for a Nicky Jam music event—all under the employ of Glamour Transportation. He stated that he did "coordination" for the three events as a favor to maintain his driving rights with the company. He denied that he was compensated in cash for services performed after May 31, 2017. Defendant explained to the investigator that defendant had expenditures he had to cover for gas, meals, and hotels. The owner of Glamour Transportation reimbursed defendant for the receipts defendant provided. Defendant stated that he did not make money.

Christian Rodriguez testified that he has owned Glamour Transportation since 2006. His company serves its clients by managing tours and logistics, and operates in California, Arizona, Nevada, Texas and Florida. The company's fleet includes eight vehicles and about 18 independent contractors. Everyone employed by Glamour Transportation is paid by the hour or day, and averages about $12.50 an hour or up to $200 a day. Rodriguez testified that the company's petty cash account is reserved for expense reimbursements and "per diem" payments to coordinators and drivers for their

5

time. Coordinators assist with logistics and make sure all of the drivers are in place. Coordinators are compensated the same as drivers. The drivers' duties include being on time, driving between points, standby services, and making dry runs to venues.

On May 21, 2019, Rodriguez spoke with the DA investigator regarding defendant's jobs in 2017 and 2018. Rodriguez stated that he had received a Phoenix traffic citation from defendant dated October 13. The year on the citation was illegible. The citation was issued to defendant and associated with a Lincoln Navigator from the Glamour Transportation fleet. Rodriguez paid the ticket in the amount of $358.91. Moreover, Rodriguez reimbursed defendant for his expenses and paid him an undisclosed amount of cash for the trip to Arizona.

Rodriguez testified that defendant worked for Glamour Transportation in 2017 and 2018. On November 9 and 10, 2017, defendant worked as a coordinator for Anna Gabrielle; he was paid $350. On November 14 and 15, 2017, defendant worked at the Latin Grammys in Las Vegas; he was paid in cash for services. On November 22 and 23, 2017, defendant worked in Dallas as a coordinator in connection with Marc Anthony; he was paid $150 per day for two days. In February 2018, defendant chaperoned Marc Anthony's children for a day and was paid a $200 gratuity from the client instead of any wages from Glamour Transportation. On April 21, 2018, defendant used a Glamour Transportation limousine to drive to Palm Springs International Airport to coordinate the arrival of J. Balvin in Coachella. Rodriguez believed that defendant was "most likely" paid in cash for that trip.

6

**DISCUSSION**

A.    PENAL CODE SECTION 984 DOES NOT APPLY TO DEFENDANT'S

CONVICTIONS

On appeal, defendant contends that his perjury and workers' compensation fraud convictions in counts 3 and 4 stemming from his second deposition should be vacated under Penal Code section 954.  He claims that the convictions for counts 3 and 4 were both based on the same statement he made in his first deposition, for which he was convicted of perjury and workers' compensation fraud in counts 1 and 2.  We are not persuaded.

1.    *BACKGROUND*

In counts 1 and 2, the information charged defendant with workers' compensation insurance fraud and perjury, respectively, on or about January 18, 2018.  The information specifically alleged as to each count that defendant "lied about receiving income while simultaneously receiving [TTD] benefits.

In counts 3 and 4, the information charged defendant with workers' compensation insurance fraud and perjury, respectively, on or about July 2, 2018.  As in counts 1 and 2, the information alleged as to each count that defendant "lied about receiving income while simultaneously receiving [TTD] benefits."

The trial court provided instructions to the jury on the elements of workers' compensation insurance fraud and perjury.  In the perjury instruction under CALCRIM No. 2640, the trial court informed the jury that defendant made false statements during his deposition testimony as follows:

7

"January 18, 2018 Deposition:

"*Page 19: lines 7-8*

"Q: Who is your most recent employer?

"A: Tolle Nursery.

"*20: 1-5*

"Q: And then when was the, if you can recall, the last day you worked for Tolle Nursery?

"A: 6/16/2017.

"Q: And how about for Glamour Transportation?

"A: May of 2017.

"July 2, 2018 Deposition:

"*69: 24-25 and 70:1*

"Q: So, currently, what is your source of income besides this temporary disability?

"A: It's just the temporary disability.

"*70: 9-15*

"Q: And when was the last day you physically worked anywhere?

"A: My last day was /16 of 2017.

"Q: And that's with the nursery; correct?

"A: Correct.

"Q: Have you worked anywhere else since then?

"A: No.

*70: 16-21*

"Q:  Are you still considered an employee of Glamour Transportation?

"A:  Yes.

"Q:  When was the last time you worked for them in any capacity?

"A: 5/31/2017.

"*70:22-25 and 71:1-9*

"Q:  And I just want to clarify.  I don't mean—because I understand you did tours or you would go on tours.  I don't necessarily mean going on tours but any type of—if it was a one-day job or anything like that.  Have you performed any type of services or jobs for them—

"A:  No.

"Q:  —since last year?

"A:  No.

"*71:7-9*

"Q:  Have you provided any driving services to any companies over the last year?

"A:  No.

"*96: 22-25 and 97:1-6*

"Q:  Ok.  At Glamour Transportation—because I wasn't here at the last depo. And I don't know if she ever asked you this question—besides you going on tours with the artists, what other services do they provide or would you before help out with?

"A:  Oh, airport runs, picking up artists at the airports.

"Q:  Have you done any of that over the last—since May of 2017?

9

"A:  No.  My last one was May 31st."

The trial court went on to instruct the jury with CALCRIM No. 2740:  "You may not find the defendant guilty unless all of you agree that the People have proved that the defendant made at least one false statement as to each count and you all agree on which particular false statement the defendant made.  The People do not need to prove that all the allegedly false statements were in fact false."

In the prosecutor's closing argument, the prosecutor argued that defendant had lied in his testimony at both depositions about his employment with Glamour Transportation and that his only source of income was TTD payments.  Defendant had lied when he stated that he had not performed any driving services for any company during the pertinent times and when he denied he had made any airport runs.

The defense did not dispute that defendant was untruthful when defendant stated that he did not work for Glamour Transportation after May 31, 2017, in his deposition testimonies.  Defense counsel argued that the issue in the case was whether defendant lied about receiving income while receiving TTD payments.  Defendant did not believe he was earning income when he worked for Glamour Transportation after May 2017.  Defendant only received reimbursement and per diem, not income.

In rebuttal, the prosecution reminded the jurors that Rodriguez had testified that he paid defendant for his time.  The prosecutor argued that defendant had made eight false statements in two separate depositions, one of which was defendant's statement that his only source of income was TTD payments.  The evidence, however, showed that

10

Rodriguez paid defendant for his work with Glamour Transportation and defendant worked on multiple occasions in California, Arizona, Texas, and elsewhere.

### 2.    *LEGAL BACKGROUND AND STANDARD OF REVIEW*

"The elements of perjury are: ' "a willful statement, under oath, of any material matter which the witness knows to be false.' " (*People v. Garcia* (2006) 39 Cal.4th 1070, 1091; § 118, subd. (a).)  All elements of the charge of perjury must be determined by the jury, including materiality.  (*People v. Kobrin* (1995) 11 Cal.4th 416, 427-428.)  The test for materiality under section 118 "is whether the statement could probably have influenced the outcome of the proceedings."  (*People v. Pierce* (1967) 66 Cal.2d 53, 61.)  A defendant who makes two separate false statements under the same oath may be convicted of two counts of perjury under section 118, subdivision (a).  (*People v. Jimenez* (1992) 11 Cal.App.4th 1611, 1623-1624 (*Jimenez*) [defendant accused of vehicle-related crimes was properly convicted of two counts of perjury for testifying at trial that (1) he had never driven a brown station wagon; and (2) he had been in Mexico when the collision occurred], disapproved on another ground by *Kobrin*, at p. 419.) Multiple perjury convictions based on multiple separate statements are proper because the actus reus (or gravamen) of section 118 is the making of a false statement and it has been committed more than once.  (*Jimenez*, at p. 1623, citing *Wilkoff v. Superior Court* (1985) 38 Cal.3d 345, 349.)

Where the issue is whether multiple convictions are proper under Penal Code section 954, the standard of review is de novo. (*People v. Villegas* (2012) 205 Cal.App.4th 642, 646.)

3. *ANALYSIS*

In this case, the statements made by defendant at the two depositions are sufficiently distinct. During defendant's first deposition, he testified that his last employer was Tolle Nursery, where he worked until June 16, 2017. He also testified that he did not work for Glamour Transportation after May 2017. At his second deposition six months later, defendant repeated his testimony from the first deposition that the last day he worked for Tolle Nursery was June 16, 2017, and the last day he worked for Glamour Transportation was May 31, 2017. Defendant then went on and testified that he did not make airport runs, tour, or provide any driving services for any company since that time. He further explained that his only source of income was from TTD. Defendant's testimony, however, was contradicted by the evidence. A private investigator captured a video of defendant on April 21, 2018, where defendant parked his car at a storage facility then drove to the Palm Springs Airport in a Lincoln Navigator. Moreover, at trial, the owner of Glamour Transportation, Rodriguez, testified that defendant worked for Glamour Transportation on November 9, 14, 15, 22 and 23, 2017; defendant was paid for his services. Furthermore, defendant was paid a gratuity by a client for defendant's work on behalf of Glamour Transportation in February 2018. Defendant also performed work for Glamour Transportation at the airport in Palm Springs, for which he was paid.

12

The evidence showed that defendant lied about the identify of his last employer—defendant stated he last worked for Tolle Nursery; his last day of work for Glamour Transportation; that he did not make any airport runs during the pertinent time; that he did not provide any driving services for any company during the pertinent time; and that his sole source of income was TTD.  Although there is significant overlap between the statements that serve as the bases for each count, the statements are factually distinct.

Notwithstanding the different testimonies defendant gave at the two separate depositions, defendant argues that the two depositions continued a single proceeding. Assuming arguendo that the two depositions constituted a single proceeding, the evidence showed, as discussed *ante*, that defendant made numerous false statements.  In *Jimenez*, the defendant was charged, among other offenses, with two counts of perjury based on two false statements he made at an earlier trial.  (*Jimenez*, *supra*, 11 Cal.App.4th at p. 1620.)  At his first trial, the defendant testified that (1) he had never driven a brown station wagon, the type of vehicle implicated in the crimes; and (2) he had been in Mexico when the collision occurred.  (*Ibid.*)  The court in *Jimenez* held that because "defendant made two separate false statements, he could properly be convicted of two counts of perjury."  (*Id.* at p. 1624, fn. omitted.)  The court rejected the defendant's argument that since he had made two false statements under one oath, only one count of perjury could be charged.  (*Id.* at p. 1624, fn. 7.)

We further consider whether the statements underlying the different counts of perjury and fraud are distinctly material, because each false statement must be of a "material matter" to support a perjury conviction.  (§ 118, subd. (a).)

13

At the first deposition, defendant testified that the last employer for whom he worked was Tolle Nursery in June 2017. And that he last worked for Glamour Transportation in May 2017. At the second deposition, in addition to confirming his statements made at the first deposition, defendant stated that his only source of income was from TTD, and that he has not worked anywhere else since he started receiving TTD. Moreover, defendant stated that he did not go on any tours, picked up artist at airports, or perform any other types of services for Glamour Transportation.

Although defendant's statements about his employment at Glamour Transportation are closely related, the record establishes that defendant's specific statements made at the second deposition are separately material for purposes of determining the amount of defendant's workers' compensation award. Accordingly, because the false statements associated with each count implicate distinct work defendant had performed while collecting benefits potentially impact the amount of his workers' compensation award, they are not identical statements regarding the same material matter, and thus may properly serve as the bases for two separate perjury counts.

Based on the above, we find that defendant's convictions in counts 3 and 4 are based on separate, materially false statements. Therefore, Penal Code section 954 does not apply.

B. <u>THE MATTER IS REMANDED PURSUANT TO ASSEMBLY BILL NO. 1950</u>

Defendant contends that his three-year probation term should be reduced to two years because section 1203.1, under which he was sentenced to three years formal

14

probation, has been amended by Assem. Bill No. 1950, effective January 1, 2020, and the maximum probation sentence he can receive is two years. He contends the change applies retroactively to his case, which is not final. The People agree with defendant.

When defendant was sentenced, Penal Code section 1203.1 allowed the trial court to "suspend the imposing or the execution of the sentence and . . . direct that the suspension may continue for a period of time not exceeding the maximum possible term of the sentence, except as hereinafter set forth, and upon those terms and conditions as it shall determine." (Former Pen. Code, § 1203.1, subd. (a).)

Effective January 1, 2021, Penal Code section 1203.1, subdivision (a), provides that the trial court "may suspend the imposing or the execution of the sentence and may direct that the suspension may continue for a period of time not exceeding two years." (See Stats. 2020, ch. 328, § 2.) The two-year limit does not apply where the current offense is a violent felony listed in Penal Code section 667.5, subdivision (c), or where the current offense is a theft offense where the amount taken exceeded $25,000. (*Ibid.*)

Defendant and the People agree that the change to Penal Code section 1203.1 applies retroactively to him under the reasoning of *In re Estrada* (1965) 63 Cal.2d 740, 748 even though the Legislature did not state that the change was intended to apply retroactively. In *People v. Sims* (2021) 59 Cal.App.5th 943 (*Sims*), an appellate court found that despite probation not technically being punishment, the retroactive rule of *Estrada* applied to Assem. Bill No. 1950. It found, "The People are correct that '[a] grant of probation is "qualitatively different from such traditional forms of punishment as fines or imprisonment." ' [Citation.] Probation is primarily rehabilitative and a grant of

15

probation is considered an act of grace or clemency in lieu of traditional forms of punishment." (*Id.* at p. 958.) It further found, "However, we do not believe the label affixed to probation—i.e., whether it is labeled punishment, rehabilitation, or some combination—is necessarily determinative of whether the *Estrada* presumption of retroactivity applies. When a court places a defendant on probation, it may, of course, fine the defendant or order the defendant confined in jail, or both. [Citation.] But it has discretion to impose a variety of other probation conditions as well. It may, for example, require that the probationer submit to searches of electronic devices and social media accounts [citation], submit to periodic drug testing [citation], refrain from associating with persons or groups of persons [citation], and obtain permission from a probation officer before changing addresses or leaving the state or county. (*Id.* at p. 959.)

The *Sims* court recognized that by "limiting the maximum duration a probationer can be subject to such restraint, Assembly Bill No. 1950 has a direct and significant ameliorative benefit for at least some probationers who otherwise would be subject to additional months or years of potentially onerous and intrusive probation conditions." (*Sims*, *supra*, 59 Cal.App.5th 959.) As such, "by limiting the duration of felony probation terms, Assembly Bill No. 1950 ensures that at least some probationers who otherwise would have been imprisoned for probation violations will remain violation-free and avoid incarceration." (*Id.* at p. 960.)

The *Sims* court also found that, "Assembly Bill No. 1950 does not contain a savings clause evincing a clear intent to overcome the *Estrada* presumption of retroactivity. 'Nor do we perceive in the legislative history a clear indication that the

16

Legislature did not intend for the statute to apply retroactively.' [Citation.] On the contrary, the legislative history for Assembly Bill No. 1950 suggests the Legislature harbored strong concerns that probationers—including probationers whose cases are pending on appeal—face unwarranted risks of incarceration due to the lengths of their probation terms." (*Sims*, *supra*, 59 Cal.App.5th at p. 961.)

The *Sims* court concluded, "For all these reasons, we conclude the two-year limitation on felony probation set forth in Assembly Bill No. 1950 is an ameliorative change to the criminal law that is subject to the *Estrada* presumption of retroactivity. The Legislature did not include a savings clause or other clear indication that the two-year limitation applies on a prospective-only basis. Therefore, we conclude the two-year limitation applies retroactively to all cases not reduced to final judgment as of the new law's effective date. Here, the defendant's case was pending on direct appeal and thus was not final as of Assembly Bill No. 1950's effective date. Accordingly, the defendant is entitled to seek a reduced probation term on remand under Assembly Bill No. 1950." (*Sims*, *supra*, 59 Cal.App.5th at p. 964.)

We agree with the parties and the court in *Sims* and conclude that the changes to Penal Code section 1203a apply to defendant's sentence. Defendant is entitled to the benefit of the change to Penal Code section 1203a. As such, we will order that defendant's probationary sentence be reduced from three years to two years. (See *People v. Quinn* (2021) 59 Cal.App.5th 874, 885.)

## DISPOSITION

The order granting probation is modified and reduced to two years; the superior court is directed to forward a certified copy of an amended abstract to the appropriate authorities.  (*People v. Quinonez* (2020) 46 Cal.App.5th 457, 467.)  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER\
Acting P. J.

We concur:

CODRINGTON\
J.

RAPHAEL\
J.

18