127 Cal.Rptr.2d 211 (2002)
103 Cal.App.4th 1046
In re ADRIAN R., a Person Coming Under the Juvenile Court Law.
The People, Plaintiff and Respondent,
v.
Adrian R., Defendant and Appellant.
No. H022999.
Court of Appeal, Sixth District.
October 22, 2002.
As Modified November 21, 2002.
Review Granted January 22, 2003.
*214 Mitri Hananis, under appointment by the Court of Appeal, for Appellant: Adrian R.
Bill Lockyer, Atty. Gen., Robert R. Anderson, Chief Asst. Atty. Gen., Ronald A. Bass, Senior Asst. Atty. Gen., Gerald A. Engler, Supervising Deputy Atty. Gen., *215 George F. Hindall III, Deputy Atty. Gen., for Respondent: The People.
BAMATTRE-MANOUKIAN, Acting P.J.
Minor Adrian R. was charged along with two other juveniles with committing misdemeanor "ASSAULT AND BATTERY for the benefit of, at the direction of or in association with a criminal street gang in violation of section 186.22(d) of the Penal Code" on March 6, 2001. After a jurisdictional hearing, the court sustained the assault charge as to all three juveniles and continued minor as a ward of the juvenile court.
At the dispositional hearing, the court placed minor with his grandparents and imposed a number of probation conditions, including the following: no contact with the other two juveniles involved in the offense or the victim; "you are not to be present at any known gang gatherings, ... You're not to be around anyone whom you know is in a gang." Over minor's constitutional objections, the court found that the crime was gang-related and it ordered minor to register pursuant to Penal Code sections 186.30 and 186.32.
On appeal minor contends that the gang registration statutes are unconstitutional. He contends the initiative that enacted them violated the single-subject rule. He also contends the statutes are vague and overbroad and infringe on his rights to due process, privacy, free speech, association, and counsel and his protections against self-incrimination, unreasonable search and search, and cruel and unusual punishment. For the reasons stated below, we will affirm the dispositional order after adopting a narrowing construction of the statutes.
THE OFFENSE
On March 6, 2001, Gerardo M., took the school bus home from Aptos High School. He got off the bus at H.A. Hyde, an elementary school in Watsonville near a Department of Motor Vehicles (DMV) office.
According to Deputy Sheriff Raymond Hernandez, a gang expert, the bus stop is in the middle of a Norteño neighborhood. Hernandez can tell by the graffiti and by Norteñno crimes in the neighborhood. Norteñnos and Surenos are rival Hispanic gangs in prison and on the streets who fight for territory. Aptos High School has a reputation for being a Sureno school.
As Gerardo walked home with his friend, Miguel, a group of four or five guys walked after them. As Gerardo crossed the street, one of the guys yelled, "Norte Califas.... [¶] We go down [¶] Right here for it." Someone yelled, "Puro Norte," and, "This is our barrio. Here everything goes for Norte." They asked Gerardo to approach. He responded that he claimed nothing and did not care. He was telling them that he was not related to a gang.
Gerardo continued to walk away. He ran when he saw them running after him. Gerardo went into the DMV office for safety and looked back at the juveniles. Gerardo called his mother from the DMV office. When he got home they called the police.
Later that day a police officer apprehended four juveniles meeting Gerardo's description. Gerardo identified three of them in the field as among his pursuers, including minor, Luis E., and Albert R. Gerardo recognized Albert R. from Aptos High.
According to gang expert Hernandez, the words used amounted to gang challenges claiming the area for Norteños and asking Sureños to fight. A gang member cannot back down from a challenge. A *216 gang member cannot refrain from aiding a fellow gang member in a fight.
According to Hernandez, minor is a documented member of a gang called Clifford Manor Locos (CML), one of a number of Watsonville Norteno gangs. Minor was involved in a misdemeanor assault two or three blocks away at the end of the prior year. Minor and another individual approached a fellow who was walking home to Clifford Manor Apartments from the Aptos High bus stop. They asked him what he claimed. He said, "Nothing." He was beaten, kicked, and stabbed with a pen, while they said, "It's all about CML" and "Norte."
According to Hernandez, different Norteños gangs used to fight with each other, but a few years ago the word came down from the prison gangs that all Norteños should get along. Now members of different Norteño gangs commit joint assaults on perceived Sureños. Albert R. belongs to Watsonville Varrio Norte (WVN), another Norteño gang. Luis E. is a Norteño associate.
According to Hernandez, assaulting perceived Sureños is a primary activity of CML. Hernandez provided evidence of an assault conviction of Sergio Hernandez, a CML member, an assault conviction of Carlos Hernandez, a CML member, and an assault conviction of Mike DeAnda, a WVN member. In Raymond Hernandez's opinion, the current crime was committed "under that umbrella for Norteño, or Norte," and specifically to benefit CML.
At the end of the dispositional hearing, the juvenile court stated, "The People have sustained their burden regarding the gang elements." The court concluded that minor had committed an assault. "[H]ad we not had the gang elements, three fifteen-sixteen-year-old individuals saying things like this without the gang overtures, it would be a completely different matter."

THE STATUTORY SCHEME
Penal Code sections 186.30 through 186.33 were enacted as part of Proposition 21, the Gang Violence and Juvenile Crime Prevention Act of 1998.[1] Upon a court's finding that a person was involved in a gang-related crime (§ 186.30, subd. (b)), the court is required to notify the person of his or her duty to register (§ 186.31) "with the chief of police of the city in which he or she resides, or the sheriff of the county if he or she resides in an unincorporated area, within 10 days of release from custody or within 10 days of his or her arrival in any city, county, or city and county to reside there, whichever occurs first." (§ 186.30, subd. (a); cf. § 186.32, subd. (a)(1)(A).) Registration requirements are spelled out in section 186.32. The registration requirements last for five years. (§ 186.32, subd. (c).) A registrant must keep law enforcement apprised of any change of address. (§ 186.32, subd. (b).) It is a misdemeanor to knowingly violate the registration requirements. (§ 186.33, subd. (a).)

1. THE SINGLE SUBJECT RULE
Manduley v. Superior Court (2002) 27 Cal.4th 537, 117 Cal.Rptr.2d 168, 41 P.3d 3 among other things concluded that "Proposition 21 does not violate the single-subject rule, set forth in article II, section 8, subdivision (d), of the California Constitution, applicable to initiative measures." (Id. at p. 546, 117 Cal.Rptr.2d 168, 41 P.3d 3.) This answers minor's claims that the proposition violates the single-subject rule. (Id. at pp. 573-582, 117 Cal.Rptr.2d 168, 41 P.3d 3.)

*217 2. VAGUENESS OF "GANG-RELATED" CRIMES
The statute applies by its terms to three types of crimes. Section 186.30 provides in part: "(b) Subdivision (a) shall apply to any person convicted in a criminal court or who has had a petition sustained in a juvenile court in this state for any of the following offenses:
"(1) Subdivision (a) of Section 186.22.
"(2) Any crime where the enhancement specified in subdivision (b) of Section 186.22 is found to be true.
"(3) Any crime that the court finds is gang related at the time of sentencing or disposition."
Here the juvenile court ordered registration after finding that minor's crime was a gang-related crime under section 186.30, subdivision (b)(3). On appeal minor renews his contention that "gang-related" is unconstitutionally vague. Minor argues that the word "gang" has no fixed or established meaning and means different things in different jurisdictions, thereby encouraging arbitrary enforcement.
People v. Castenada (2000) 23 Cal.4th 743, 97 Cal.Rptr.2d 906, 3 P.3d 278 explained: "Recently, the United States Supreme Court had this to say on the topic: `Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement.' (Chicago v. Morales (1999) 527 U.S. 41, 56 [119 S.Ct. 1849, 144 L.Ed.2d 67].)" (Id. at p. 751, 97 Cal.Rptr.2d 906, 3 P.3d 278.) "[V]ague sentencing provisions may pose constitutional questions if they do not state with sufficient clarity the consequences of violating a given criminal statute." (U.S. v. Batchelder (1979) 442 U.S. 114, 123, 99 S.Ct. 2198, 60 L.Ed.2d 755.)
The word "gang" in isolation has many and varied meanings. (Lanzetta v. New Jersey (1939) 306 U.S. 451, 453-455, 59 S.Ct. 618, 83 L.Ed. 888; People v. Lopez (1998) 66 Cal.App.4th 615, 631, 78 Cal. Rptr.2d 66.) Without further definition it may be unconstitutionally vague. (Lanzetta v. New Jersey, supra, 306 U.S. at p. 458, 59 S.Ct. 618; see People v. Lopez, supra, 66 Cal.App.4th at p. 631, 78 Cal.Rptr.2d 66.)
As we shall explain, in its statutory context "gang" in section 186.30, subdivision (b)(3) has a specific and limited meaning. We observe that the offense described in related section 186.30, subdivision (b)(1) and the enhancement described in related section 186.30, subdivision (b)(2) are concerned specifically with one type of gang, a criminal street gang. Section 186.22, subdivision (a), mentioned in section 186.30, subdivision (b)(1), prohibits active participation "in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang." Section 186.22, subdivision (b), mentioned in section 186.30, subdivision (b)(2), prohibits commission of any felony "for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members."[2]
*218 The phrase "criminal street gang" is defined elsewhere in the statute. Section 186.22, subdivision (f) states: "As used in this chapter, `criminal street gang' means any ongoing organization, association, or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in paragraphs (1) to (25), inclusive, of subdivision (e), having a common name or common identifying sign or symbol, and whose members individually or collectively engage in or have engaged in a pattern of criminal gang activity."
Section 186.22, subdivision (e) adds to this definition. It enumerates 25 offenses which can identify a gang and it states: "As used in this chapter, `pattern of criminal gang activity' means the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of two or more of the following offenses, provided at least one of these offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses were committed on separate occasions, or by two or more persons: ..."
We recognize that section 186.30, subdivision (b)(3) uses the word "gang" when other parts of the initiative that enacted section 186.30 specifically employ the phrase "criminal street gang." For example, Proposition 21 added subdivision (d) to section 186.22 (ante, fn. 2), which prohibits commission of "a public offense punishable as a felony or a misdemeanor, which is committed for the benefit of, at the direction of or in association with, any criminal street gang with the specific intent to promote, further, or assist in any criminal conduct by gang members." It was this subdivision that minor was charged with violating.
But we do not believe the voters intended to distinguish between "gang" and "criminal street gang." Findings in the initiative demonstrate the voters' concerns. Section 2 stated: "(b) Criminal street gangs and gang-related violence pose a significant threat to public safety and the health of many of our communities. Criminal street gangs have become more violent, bolder, and better organized in recent years." "(k) Dramatic changes are needed in the way we treat juvenile criminals, criminal street gangs, and the confidentiality of the juvenile records of violent offenders if we are to avoid the predicted, unprecedented surge in juvenile and gang violence." (Voter Information Guide Primary *219 Elec. (Mar.2000) text of Prop. 21, p. 119, at

Given the concern of the voters with criminal street gangs, we construe "gang" in section 186.30, subdivision (b)(3) to mean "criminal street gang" as defined in section 186.22, subdivisions (e) and (f). People v. Lopez, supra, 66 Cal.App.4th 615, 78 Cal.Rptr.2d 66 reached the same conclusion when the word "gang" in an adult probation condition was challenged as unconstitutionally vague. (Id, at pp. 630-634, 78 Cal.Rptr.2d 66.)
Minor also contends that the word "related" is vague. "`Related' is a commonly used word with a broad meaning that encompasses a myriad of relationships. For example, a leading legal dictionary defines `related' to mean `standing in relation; connected; allied; akin.' (Black's Law Diet. (6th ed.1990) p. 1288, col. 1.)" (Bay Cities Paving & Grading, Inc. v. Lawyers' Mutual Ins. Co. (1993) 5 Cal.4th 854, 868, 21 Cal.Rptr.2d 691, 855 P.2d 1263.) "[T]he fact that `related' can encompass a wide variety of relationships does not necessarily render the word ambiguous. To the contrary, a word with a broad meaning or multiple meanings may be used for that very reasonits breadthto achieve a broad purpose." (Ibid.)
Again, "related" must be understood in context. The Attorney General suggests that a "crime is `gang related,'" when it was "committed, in the words of the statute, `for the benefit of, at the direction of, or in association with' a street gang." (People v. Gardeley (1996) 14 Cal.4th 605, 622, 59 Cal.Rptr.2d 356, 927 P.2d 713.) Though this discussion by the California Supreme Court was not concerned with section 186.30, subdivision (b)(3), we adopt it as an explanation of "related."
We conclude that this narrowing construction of "gang-related" renders the phrase constitutionally clear.

3. JUDICIAL AUTHORITY TO REWRITE STATUTES
Minor recognizes that a court can save a statute from a vagueness challenge by a narrowing construction. In Kopp v. Fair Pol. Practices Com. (1995) 11 Cal.4th 607, 47 Cal.Rptr.2d 108, 905 P.2d 1248 (Kopp), the California Supreme Court extensively reconsidered the power of courts to "reform" or rewrite statutes and initiatives. (Id. at pp. 626-663, 47 Cal.Rptr.2d 108, 905 P.2d 1248.) The court concluded that "a court may reformi.e., `rewrite'a statute in order to preserve it against invalidation under the Constitution, when we can say with confidence that (i) it is possible to reform the statute in a manner that closely effectuates policy judgments clearly articulated by the enacting body, and (ii) the enacting body would have preferred the reformed construction to invalidation of the statute. By applying these factors, courts may steer clear of `judicial policymaking' in the guise of statutory reformation, and thereby avoid encroaching on the legislative function in violation of the separation of powers doctrine." (Id. at pp. 660-661, 47 Cal.Rptr.2d 108, 905 P.2d 1248.)
Minor invokes this court's statement in In re Timothy R. (1988) 202 Cal. App.3d 593, 248 Cal.Rptr. 721: "Courts will attempt to preserve an enactment's constitutionality by a reasonable narrowing construction (e.g., Franklin v. Leland Stanford Junior University (1985) 172 Cal.App.3d 322, 348 [218 Cal.Rptr. 228]), but `[i]f elimination of objectionable parts of a statute requires a wholesale rewriting, a court's attempt to do so transgresses both the legislative intent and the judicial function. ([Citation]; People v. Stevenson (1962) 58 Cal.2d 794, 798 [26 Cal.Rptr. 297, *220 376 P.2d 297] ....)' (In re King (1970) 3 Cal.3d 226, 237 [90 Cal.Rptr. 15, 474 P.2d 983], cert. den. 403 U.S. 931 [91 S.Ct. 2249, 29 L.Ed.2d 709].)" (Id. at p. 601, 248 Cal.Rptr. 721.)
As explained above, we regard it as consistent with the voters' intent to construe "gang" in section 186.30, subdivision (b)(3) to mean "criminal street gang." We are confident the voters would prefer a narrowing construction to invalidation of the statute.

4. THE REGISTRATION REQUIREMENT
On appeal minor challenges the probation condition requiring him to register with local law enforcement. The focus of many of minor's objections is section 186.32, subdivision (a)(1)(C), which states that upon registration: "A written statement signed by the juvenile, giving any information that may be required by the law enforcement agency, shall be submitted to the law enforcement agency."
Minor contends that a requirement that he disclose "any information that may be required by the law enforcement agency" is so vague and overbroad as to infringe his constitutional rights to due process, privacy, free speech, association, and counsel, and his protections against self-incrimination, unreasonable search and seizure, and cruel and unusual punishment.

A. Due process and self-incrimination
As indicated above, to satisfy due process, a "statute must provide definite guidelines for the police in order to prevent arbitrary and discriminatory enforcement. [Citations.] When the Legislature fails to provide such guidelines, the mere existence of a criminal statute may permit `"a standardless sweep"' that allows police officers, prosecutors and juries `"to pursue their personal predilections."' [Citations.]" (People v. Heitzman (1994) 9 Cal.4th 189, 199, 37 Cal.Rptr.2d 236, 886 P.2d 1229.)
It is established that the privilege against self-incrimination is violated by a registration statute "directed at a highly selective group inherently suspect of criminal activities" (Albertson v. Subversive Activities Control Board (1965) 382 U.S. 70, 79, 86 S.Ct. 194, 15 L.Ed.2d 165 (Albertson)) that requires disclosure of information "which would surely prove a significant `link in a chain' ... of evidence tending to establish" (Marchetti v. United States (1968) 390 U.S. 39, 48, 88 S.Ct. 697, 19 L.Ed.2d 889 (Marchetti)) the registrant's guilt of a past crime. Accordingly, in Albertson the United States Supreme Court set aside orders requiring people to register as Communist Party members. (Albertson, supra, 382 U.S. 70, 81, 86 S.Ct. 194, 15 L.Ed.2d 165.) In other cases, the United States Supreme Court has held that the self-incrimination privilege applies to statutes requiring disclosure of participation in illegal gambling (Marchetti, supra, 390 U.S. 39, 60-61, 88 S.Ct. 697, 19 L.Ed.2d 889; Grosso v. United States (1968) 390 U.S. 62, 88 S.Ct. 709, 19 L.Ed.2d 906), possession of an unregistered firearm (Haynes v. United States (1968) 390 U.S. 85, 100, 88 S.Ct. 722, 19 L.Ed.2d 923), and possession of marijuana (Leary v. United States (1969) 395 U.S. 6, 27, 89 S.Ct. 1532, 23 L.Ed.2d 57).
While the statute in issue here does not necessarily require disclosure of incriminating information, it broadly requires disclosure of "any information that may be required by the law enforcement agency." It seems obvious that a law enforcement agency would be most interested in obtaining incriminating information from those already adjudged to have been involved in gang-related crimes.
*221 Because the statute targets this group for unlimited disclosure to law enforcement, we consider it distinguishable from Vehicle Code sections requiring persons involved in vehicle accidents to identify themselves. These statutes are "unlike registration schemes aimed at identifying criminal behavior" and are "essentially regulatory, its purpose being `to promote the satisfaction of civil liabilities arising from automobile accidents.'" (People v. Kroncke (1999) 70 Cal.App.4th 1535, 1549, 83 Cal.Rptr.2d 493, quoting from California v. Byers (1971) 402 U.S. 424, 430, 91 S.Ct. 1535, 29 L.Ed.2d 9.) The limited Vehicle Code disclosure requirements are directed at the public at large rather than at a group suspected of criminal activities. (Ibid.; cf. People v. Jiminez (1992) 11 Cal.App.4th 1611, 1627-1628, 15 Cal. Rptr.2d 268, disapproved on other grounds by People v. Kobrin (1995) 11 Cal.4th 416, 45 Cal.Rptr.2d 895, 903 P.2d 1027.)
Minor argues that section 186.32, subdivision (a)(1)(C), as broadly written, infringes due process and invites violation of the self-incrimination privilege of a registrant, as it provides no guidelines for the information that may be required. (Cf. Kolender v. Lawson (1983) 461 U.S. 352, 360-361, 103 S.Ct. 1855, 75 L.Ed.2d 903.) The Attorney General essentially concedes that the statute must be given a narrowing construction to save it from constitutional infirmity, asserting "that the language of section 186.32, subdivision (a)(1)(C) should be construed to require any information `reasonably related to criminal street gang activity.'"
The Attorney General alternatively suggests that "law enforcement agencies can ask for information which does not require any self-incrimination, such as: the name of the gang to which the juvenile allegedly belongs, the territorial boundaries of that gang or others, names of gang associates or rivals, monikers or aliases, the number of members, the description and license plates of vehicles driven by the registrant or others, employment information, and other locator information." However, there may well be circumstances in which the answers to some of these questions could be incriminatory. As noted above (ante, fn. 2), section 186.22, subdivision (a) penalizes "criminal knowledge, willful promotion of a felony, and active participation in a criminal street gang." (People v. Castenada, supra, 23 Cal.4th at p. 752, 97 Cal.Rptr.2d 906, 3 P.3d 278.)
These observations suggest that a more limited disclosure requirement on registration would not only avoid potential infringement on the privilege against self-incrimination, but also other constitutional problems discussed below. Our desire in construing this statute is to provide definite guidelines that address these constitutional concerns.
It is established that routine booking information concerning a person's identity and address is not incriminatory. (See Pennsylvania v. Muniz (1990) 496 U.S. 582, 601-602, 110 S.Ct. 2638, 110 L.Ed.2d 528 (plurality); People v. Rucker (1980) 26 Cal.3d 368, 387, 162 Cal.Rptr. 13, 605 P.2d 843.) The right to remain silent does not apply to "questions seeking biographical information for booking purposes." (Gladden v. Roach (1989) 864 F.2d 1196, 1198; cf. People v. Powell (1986) 178 Cal.App.3d 36, 40, 223 Cal.Rptr. 475.)
The purposes of registration would be served by construing "any information" to be limited to information enabling law enforcement to identify and locate the registrant, such as the person's full name, any aliases or gang monikers or change of name, the person's date of birth, residence address, school or employment, and description and license plate number of any vehicle the person owns or drives.
*222 In other contexts courts have assumed that the Legislature requires registration of those criminal offenders who are more likely to repeat their offenses. Registration facilitates police surveillance and crime detection and deters recidivism. (People v. Castellanos (1999) 21 Cal.4th 785, 796, 88 Cal.Rptr.2d 346, 982 P.2d 211; Wright v. Superior Court (1997) 15 Cal.4th 521, 527, 63 Cal.Rptr.2d 322, 936 P.2d 101; In re Luisa Z. (2000) 78 Cal.App.4th 978, 982, 93 Cal.Rptr.2d 231.) Presumably the voters had the same reasons for enacting the registration requirement for those adjudged to have committed gang-related offenses. This construction does not usurp the initiative process but serves the purposes of the enactors.
We adopt this narrowing construction of section 186.32, subdivision (a)(1)(C) in order to provide sufficient guidance to law enforcement. To the extent a law enforcement question may ask for more than identifying or locational information, minor is entitled to assert his privilege against self-incrimination. (Haynes v. United States, supra, 390 U.S. 85, 100, 88 S.Ct. 722, 19 L.Ed.2d 923.) As so construed the statute is not unconstitutionally vague. (People v. Bailey (2002) 101 Cal.App.4th 238, 245, 123 Cal.Rptr.2d 729 (Bailey).)

B. Search and seizure
Not only is a registering juvenile supposed to provide "any information required," but the juvenile is required to submit fingerprints and a current photograph. (§ 186.32, subd. (a)(1)(D).) Minor contends that this procedure will subject him to "fingerprinting, photographing, and undetermined and unlimited questioning by law enforcement in a custodial setting, not unlike the booking process. He is not free to leave and he is not free to refuse to answer questions. He has effectively been seized without a warrant and without reasonable or probable cause."
The Attorney General responds that minor waived this objection, since it was not among the constitutional arguments he made in the juvenile court. We will assume without deciding that the waiver doctrine does not apply to challenges of probation conditions that raise only pure questions of constitutional law. (In re Justin S. (2001) 93 Cal.App.4th 811, 814-815, 113 Cal.Rptr.2d 466; contra, People v. Gardineer (2000) 79 Cal.App.4th 148, 151-152, 93 Cal.Rptr.2d 863.)
The United States Supreme Court has explained: "`Probation, like incarceration, "is a form of criminal sanction imposed by a court upon an offender after verdict, finding, or plea of guilty."' ... Probation is `one point ... on a continuum of possible punishments ranging from solitary confinement in a maximum-security facility to a few hours of mandatory community service.' ... Inherent in the very nature of probation is that probationers `do not enjoy "the absolute liberty to which every citizen is entitled."' ... Just as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens." (United States v. Knights (2001) 534 U.S. 112, 119,122 S.Ct. 587, 591, 151 L.Ed.2d 497; citations omitted.) A minor who is on probation has a reduced expectation of privacy and what might otherwise be an unreasonable intrusion may be reasonable under the Fourth Amendment to the extent necessitated by legitimate governmental demands. (In re Tyrell J. (1994) 8 Cal.4th 68, 85, 32 Cal. Rptr.2d 33, 876 P.2d 519; In re Binh L. (1992) 5 Cal.App.4th 194, 204, 6 Cal. Rptr.2d 678.) We conclude that it is constitutionally reasonable to facilitate crime *223 detection and deter recidivism to require a minor involved in a gang-related crime to provide fingerprints and locational information to local law enforcement for a five-year period. Weighed against the governmental interest in protecting the public, the modified disclosure requirement does not constitute unreasonable search or seizure.

C. Privacy
California's express constitutional privacy provision (Cal. Const., art. I, § 1) is perhaps more protective of privacy than the federal Constitution. (See American Academy of Pediatrics v. Lungren (1997) 16 Cal.4th 307, 326-327, 66 Cal.Rptr.2d 210, 940 P.2d 797.) This provision was enacted to deter governmental collection of information about private citizens. (White v. Davis (1975) 13 Cal.3d 757, 774, 120 Cal.Rptr. 94, 533 P.2d 222.) Minor complains about the breadth of questions that he might be asked about himself and others.
Loder v. Municipal Court (1976) 17 Cal.3d 859, 132 Cal.Rptr. 464, 553 P.2d 624 (Loder) explained, "In White v. Davis (1975) 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 533 P.2d 222], we observed that `the amendment does not purport to prohibit all incursion into individual privacy but rather that any such intervention must be justified by a compelling interest.'" (Id. at p. 864, 132 Cal.Rptr. 464, 553 P.2d 624.) Loder concluded that there is "a substantial governmental interest" in retaining records of arrests that do not lead to convictions. (Id. at p. 868, 132 Cal.Rptr. 464, 553 P.2d 624.) "The interest may be characterized generally as the promotion of more efficient law enforcement and criminal justice; more specifically, the state's purpose is to protect the public from recidivist offenders." (Id. at p. 864, 132 Cal.Rptr. 464, 553 P.2d 624.) Considering the limits on dissemination of arrest information outside of law enforcement, the court concluded that law enforcement retention of this information did not violate the state constitutional right of privacy. (Id. at pp. 869-877, 132 Cal.Rptr. 464, 553 P.2d 624.)
We note that section 186.32 provides "(d) The statements, photographs and fingerprints required under this section shall not be open to inspection by any person other than a regularly employed peace or other law enforcement officer." For the same reasons as in Loder, we conclude that the state constitution's privacy provision does not prohibit requiring this limited disclosure of locational information by those adjudged to have been involved in gang-related crimes. This limited invasion of privacy is justified by the needs to deter recidivism and facilitate crime detection. (People v. Mills (1978) 81 Cal.App.3d 171, 181, 146 Cal.Rptr. 411 [sex offender registration]; People v. Hove (1992) 7 Cal. App.4th 1003, 1006-1007, 9 Cal.Rptr.2d 295 [drug offender registration].)

D. Free speech and association
Minor contends that the disclosure requirement violates his right to free speech, "since the right to free speech must, of necessity, include the right not to speak at all."
Barenblatt v. United States (1959) 360 U.S. 109, 79 S.Ct. 1081, 3 L.Ed.2d 1115 stated: "Undeniably, the First Amendment in some circumstances protects an individual from being compelled to disclose his associational relationships. However, the protections of the First Amendment, unlike a proper claim of the privilege against self-incrimination under the Fifth Amendment, do not afford a witness the right to resist inquiry in all circumstances. Where First Amendment rights are asserted to bar governmental interrogation resolution of the issue always involves a *224 balancing by the courts of the competing private and public interests at stake in the particular circumstances shown." (Id. at p. 126, 79 S.Ct. 1081.) Employing a balancing test, Barenblatt upheld Congressional inquiry into Communist Party membership and associations against a First Amendment claim.
People v. Quiroga (1993) 16 Cal.App.4th 961, 20 Cal.Rptr.2d 446 implicitly applied a balancing test in determining that the First Amendment did not justify a suspect's refusal to identify himself to the police after being arrested for another crime. While recognizing that the refusal to identify oneself amounts to protected speech (id. at pp. 968-969, fn. 2, 20 Cal. Rptr.2d 446), the court acknowledged a strong "public interest in discovering the identity of a suspect." (Id. at p. 971, 20 Cal.Rptr.2d 446.) "The routine booking interview is an indispensable procedure in the efficient administration of justice." (Ibid.) The court concluded, "In the words of Penal Code section 148, appellant's act of refusing to disclose his identify at the booking interview unquestionably served to resist, delay and obstruct the responsible peace officer in the discharge of his duties." (Id. at p. 972, 20 Cal.Rptr.2d 446.)
Applying a balancing test here, we conclude that the governmental interest in detecting and preventing crime outweighs whatever First Amendment free speech right minor may have in refusing to provide locational information to law enforcement under the circumstance where he has been adjudged to have participated in a gang-related crime. (Cf. Bailey, supra, 101 Cal.App.4th 238, 245, 123 Cal.Rptr.2d 729.) Our narrowing construction refutes minor's challenge that the statute is overbroad.
Minor also invokes his First Amendment freedom of association. People ex rel. Gallo v. Acuna (1997) 14 Cal.4th 1090, 60 Cal.Rptr.2d 277, 929 P.2d 596 (Acuna) explained: "In a series of opinions, the United States Supreme Court has made it clear that, although the Constitution recognizes and shields from government intrusion a limited right of association, it does not recognize `a generalized right of "social association."' (Dallas v. Stanglin (1989) 490 U.S. 19, 25 [109 S.Ct. 1591, 104 L.Ed.2d 18].) ...
"The high court has identified two kinds of associations entitled to First Amendment protectionthose with an `intrinsic' or `intimate' value, and those that are `instrumental' to forms of religious and political expression and activity. Of the first, the court has said that it is `central to any concept of liberty' and is exemplified by personal affiliations that `attend the creation and sustenance of a familymarriage ...; the raising and education of children [citation]; and cohabitation with one's relatives.' (Roberts v. United States Jaycees (1984) 468 U.S. 609, 619 [104 S.Ct. 3244, 82 L.Ed.2d 462].) Such affiliations, the court has remarked, `involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life. Among other things ... they are distinguished by such attributes as relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship.' (Id. at p. 620 [104 S.Ct. 3244].)
"The second kind of association that merits First Amendment protection is composed of groups whose members join together for the purpose of pursuing `a wide variety of political, social, economic, educational, religious, and cultural ends.' (Roberts v. United States Jaycees, supra, *225 468 U.S. at p. 622 [104 S.Ct. 3244].) This instrumental right of protected association is directly related to the `individual's freedom to speak, to worship, and to petition the government for the redress of grievances' because without it these liberties themselves could scarcely exist, much less thrive. (Ibid.)" (Id. at pp. 1110-1111, 60 Cal.Rptr.2d 277, 929 P.2d 596.)
Roberts v. United States Jaycees, supra, cited NAACP v. Alabama (1958) 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488, as an example of "collective effort on behalf of shared goals." (Id. at p. 622, 104 S.Ct. 3244.) In that case, on which minor relies, the court applied a balancing test before concluding that the state had shown no sufficiently compelling interest to require a political organization to disclose all its members. "Alabama has fallen short of showing a controlling justification for the deterrent effect on the free enjoyment of the right to associate which disclosure of membership lists is likely to have." (NAACP v. Alabama, supra, 357 U.S. at p. 466, 78 S.Ct. 1163.)
Acuna concluded that a "street gang's conduct in [a particular area] at issue in this case fails to qualify as either of the two protected forms of association." (Acuna, supra, 14 Cal.4th at p. 1111, 60 Cal. Rptr.2d 277, 929 P.2d 596.) We do not understand Acuna to hold broadly that "criminal street gangs are not entitled to any First Amendment `association' protection," as the Attorney General asserts. However, we see no infringement of any associational freedom in this case. (Cf. Bailey, supra, 101 Cal.App.4th 238, 245, 123 Cal.Rptr.2d 729.) Law enforcement has a substantial interest in keeping track of those adjudged to have been involved in gang-related crimes. We conclude that the limited disclosure of identifying and locational information does not violate minor's freedom of association.

E. Right to counsel
Minor contends that the registration requirement violates his Sixth Amendment right to counsel.
"[T]he right to counsel does not attach until the initiation of adversary criminal proceedings." (United States v. Gouveia (1984) 467 U.S. 180, 188, 104 S.Ct. 2292, 81 L.Ed.2d 146.) The "`core purpose' of the counsel guarantee is to assure aid at trial, when the accused [is] confronted with both the intricacies of the law and the advocacy of the public prosecutor.'" (Id. at pp. 188-189, 104 S.Ct. 2292.) "Although we have extended an accused's right to counsel to certain `critical' pretrial proceedings, (United States v. Wade 388 U.S. 218 [87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)]), we have done so recognizing that at those proceedings, `the accused [is] confronted, just as at trial, by the procedural system, or by his expert adversary, or by both.'" (Id. at p. 189, 104 S.Ct. 2292.)
Minor compares answering unlimited registration questions with a pre-indictment lineup. We do not regard registering a person's name and address with local law enforcement as the initiation of adversary criminal proceedings or as custodial interrogation. We conclude that the registration requirement as we have construed it does not infringe on minor's right to counsel. (Bailey, supra, 101 Cal.App.4th at p. 246, 123 Cal.Rptr.2d 729.)

F. Cruel and unusual punishment
Minor contends that requiring him to register with law enforcement for five years violates the federal and state constitutional prohibitions of cruel and unusual punishment. (United States Const, 8th Amend.; Cal. Const., art. I, § 17.)
One question that arises is whether the registration requirement qualifies as *226 punishment. "`The primary purpose of (the Cruel and Unusual Punishments Clause) has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes.'" (Ingraham v. Wright (1977) 430 U.S. 651, 667, 97 S.Ct. 1401, 51 L.Ed.2d 711.) "In the few cases where the Court has had occasion to confront claims that impositions outside the criminal process constituted cruel and unusual punishment, it has had no difficulty finding the Eighth Amendment inapplicable. Thus, in Fong Yue Ting v. United States (1893) 149 U.S. 698 (1893)[13 S.Ct. 1016, 37 L.Ed. 905], the Court held the Eighth Amendment inapplicable to the deportation of aliens on the ground that `deportation is not a punishment for crime.' (Id. at p. 730 [13 S.Ct. 1016].)" (Id. at p. 668 [97 S.Ct. 1401].)
Minor relies on In re Reed (1983) 33 Cal.3d 914, 191 Cal.Rptr. 658, 663 P.2d 216 (Reed), where the California Supreme Court held that registration was punishment within the meaning of California' prohibition of cruel or unusual punishment. The court adopted the due process clause analysis of Kennedy v. Mendoza-Martinez (1963) 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 to conclude that registration is punishment, even though it "may not have `historically been regarded as punishment,'" (Reed supra 33 Cal.3d at p. 921, 191 Cal.Rptr. 658, 663 P.2d 216), because it bears other indicia of punishment. First, it "is an `affirmative disability or restraint.'" (Id, at p. 920, 191 Cal.Rptr. 658, 663 P.2d 216.) It "`comes into play only on a finding of scienter.'" (Id. at p. 922, 191 Cal.Rptr. 658, 663 P.2d 216.) While it has an alternative purpose of facilitating criminal investigations, it is "`excessive in relation to the alternative purpose.'" (Ibid.) "We conclude that the sex offender registration compelled by section 290 is a form of punishment within the meaning of article I, section 17, of the Constitution." (Ibid.) Reed also concluded that the lifelong registration requirement for a misdemeanor sex offender was void under the California Constitution. (Id. at p. 926, 191 Cal.Rptr. 658, 663 P.2d 216.)
The Attorney General contends that Reed is no longer controlling. Reed was disapproved by the lead opinion in People v. Castellanos, supra 21 Cal.4th 785, 88 Cal.Rptr.2d 346, 982 P.2d 211 (Castellanos), as follows. "Upon reexamination of the decision in Reed in light of ... more recent cases, we conclude that Reed should be disapproved to the extent that decision can be interpreted as suggesting that sex offender registration constitutes punishment for purposes of ex post facto analysis.
"To begin with, in this context, we believe it is appropriate to place greater emphasis than did the court in In re Reed, supra on the circumstance that sex offender registration has not `"historically been regarded as punishment."`(33 Cal.3d at p. 920, 191 Cal.Rptr. 658, 663 P.2d 216.) While not dispositive, this factor is of great importance, because it supports the conclusions that the Legislature did not intend the provision to constitute punishment and that the provision is not punitive in nature. As noted above, virtually every other jurisdiction that has passed on the question has concluded that sex registration provisions are regulatory rather than punitive, and do not constitute punishment for purposes of the ex post facto doctrine. (See ante, at p. 792, 88 Cal.Rptr.2d 346, 982 P.2d 211.) As we have explained, our recent decision in Wright v. Superior Court, supra, 15 Cal.4th 521, 63 Cal.Rptr.2d 322, 936 P.2d 101, makes it clear that the registration provision is regulatory in nature.
*227 "Second, because the question at issue in In re Reed, supra, involved whether sex registration was `cruel or unusual punishment' as applied to the misdemeanor solicitation conviction of which the defendant in that case had been convicted, the court in Reed directed much of its consideration to whether the registration requirement was `excessive' in light of a statement made by the Los Angeles City Attorney, who appeared as amicus curiae in Reed. This statement maintained that `mandatory registration of section 67 a) misdemeanants as sex offenders is "dysfunctional,"' because it overloads law enforcement computers with useless information and imposes a disability out of proportion to the relatively minor offense that triggered its application. (33 Cal.3d at p. 922, fn. 7, 191 Cal.Rptr. 658, 663 P.2d 216, italics added.) These considerations do not apply in the present case. Further, because Reed addressed a claim of cruel or unusual punishment, the central issue was whether the registration requirement was excessive or disproportionate to the severity of the offenses committed by the defendant in Reed. The present case, by contrast, involves an ex post facto claim in which the excessiveness of the registration requirement in relation to its purpose is only one factor of several to be considered." (Castellanos, supra, 21 Cal.4th at p. 798, 88 Cal.Rptr.2d 346, 982 P.2d 211.)
The Attorney General acknowledges that the plurality opinion in Castellanos "has not authoritatively settled the proper test for determining what constitutes punishment in either an ex post facto context or in the cruel and unusual punishment context." The California Supreme Court is currently considered the questions whether registration is punishment and if it is, whether it is cruel and unusual. (In re Walter S., review granted Sept. 19, 2001, S099120 [gang member]; In re Alva review granted Sept. 19, 2001, S098928 [sex offender]; People v. Sanchez, review granted Nov. 13, 2002, S110263 [gang member].) But the Attorney General argues that, in light of Castellanos, lower courts are no longer bound by Reed.
We believe the California Supreme Court will decide that registration is not punishment in the cruel and unusual context. However, even if the California Supreme Court reaffirms Reed, that decision does not conclude that all registration is cruel and unusual. (People v. King (1993) 16 Cal.App.4th 567, 572, 20 Cal. Rptr.2d 220 (King); cf. People v. Tate (1985) 164 Cal.App.3d 133, 138, 210 Cal. Rptr. 117.) Unlike the lifetime registration requirement in Reed, the requirement of section 186.32 only lasts for five years.
"A penalty offends the proscription against cruel and unusual punishment when it is `so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity.' (In re Lynch (1972) 8 Cal.3d 410, 424, 105 Cal.Rptr. 217, 503 P.2d 921.)" (King, supra 16 Cal. App.4th at p. 571, 20 Cal.Rptr.2d 220; cf. Reed, supra 33 Cal.3d at p. 923, 191 Cal. Rptr. 658, 663 P.2d 216.) King upheld a registration requirement for a conviction of misdemeanor indecent exposure as not cruel or unusual after considering the "aggressive, even hostile," manner in which the offense was committed. (Id. at p. 576, 20 Cal.Rptr.2d 220.)
Minor contends that registration is disproportionate when considering the severity of his crime. The registration requirement applies only to a person adjudged to have been involved in a crime related to a criminal street gang. The rhetoric of Proposition 21 quoted above (ante, at p. 218) demonstrates the voters' serious concern about gang-related offenses. Minor here was adjudged to have been involved *228 in a misdemeanor assault that was gang-related. There was evidence that minor was involved in a prior gang-related assault and battery. The juvenile court concluded that this assault would have turned into a battery if minor and his companions had caught up to their victim. While minor's crime was not among the most serious, we also do not regard a five-year registration requirement with limited disclosure as that onerous. Minor attempts an interjurisdictional comparison, only to concede that he "was unable to locate any state that has a gang registration requirement." We conclude that this registration requirement does not constitute punishment, but even if considered to be punishment, this requirement is not unconstitutionally cruel or unusual.

5. THE DEMURRER
On appeal minor contends that the juvenile court erred in overruling his demurrer to the wardship petition. Minor questions the applicability of section 186.22, subdivision (d), which we repeat for ease of reference.[3] "Any person who is convicted of a public offense punishable as a felony or a misdemeanor, which is committed for the benefit of, at the direction of or in association with, any criminal street gang with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison for one, two, or three years, provided that any person sentenced to imprisonment in the county jail shall be imprisoned for a period not to exceed one year, but not less than 180 days, and shall not be eligible for release upon completion of sentence, parole, or any other basis, until he or she has served 180 days."
Minor claims there is a confusing overlap between section 186.22, subdivision (d) and section 186.22, subdivision (b), which we also repeat: "... [A]ny person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished as follows: [¶] (A) Except as provided in subparagraphs (B) and (C), the person shall be punished by an additional term of two, three, or four years at the court's discretion. [¶] (B) If the felony is a serious felony, as defined in subdivision (c) of Section 1192.7, the person shall be punished by an additional term of five years. [H] (C) If the felony is a violent felony, as defined in subdivision (c) of Section 667.5, the person shall be punished by an additional term of 10 years."
Thus, subdivision (b) applies only to persons convicted of a felony, while subdivision (d), added by Proposition 21, applies to persons convicted of "a public offense punishable as a felony or a misdemeanor."
Minor contends that to avoid redundancy, the enhancement provisions of subdivision (b) should be construed to apply only to felonies, while subdivision (d) should be construed to apply only to "wobblers," those crimes alternately punishable as a felony or a misdemeanor. (People v. Superior Court (Alvarez) (1997) 14 Cal.4th 968, 974, 60 Cal.Rptr.2d 93, 928 P.2d 1171.) Therefore, subdivision (d) does not apply at all to simple assault, which is merely a misdemeanor, not a wobbler. (§§ 240-241.)
*229 Given the voters' concern with gang-related crimes described above (ante, at p. 218), we do not believe subdivision (d) was intentionally limited only to wobblers, rather than including all offenses punishable as felonies and misdemeanors. Indeed, some legislative history suggests that the subdivision was aimed at gang members who commit misdemeanors. (People v. Arroyas (2002) 96 Cal.App.4th 1439, 1447, 118 Cal.Rptr.2d 380.) The Second District Court of Appeal, Division Two, has analyzed the interplay of subdivisions (b) and (d), pointing out that the "text of the proposition fails to indicate the purpose and effect of subdivision (d) in relationship to subdivision (b)(1)." (Id. at p. 1448, 118 Cal.Rptr.2d 380.) "Since the language of section 186.22 is ambiguous, it must be construed in favor of appellant. Such a construction precludes penalty enhancement under both subdivision (d) and subdivision (b)(1). Thus, we conclude that the enhancement of subdivision (b)(1) cannot be applied to a misdemeanor offense made a felony pursuant to subdivision (d)." (Id, at p. 1449, 118 Cal.Rptr.2d 380.) By negative implication, the penalty provisions of subdivision (d) do apply to misdemeanors and not just wobblers.[4] A misdemeanor "may become a felony for sentencing purposes under subdivision (d)." (Id. at p. 1444, 118 Cal.Rptr.2d 380.) We agree with Arroyas.
Minor complains that he "should not have been subjected to this penalty provision." There is no indication in the record that he has been. While a violation of subdivision (d) has the potential to upgrade a misdemeanor to a felony, minor here was charged with a misdemeanor violation of section 186.22, subdivision (d). Accordingly, there is no basis for the Attorney General to request that we remand this case so that the juvenile court may determine whether the offense qualified as a felony or a misdemeanor. (In re Manzy W. (1997) 14 Cal.4th 1199, 60 Cal.Rptr.2d 889, 930 P.2d 1255.)
We find neither error nor prejudice in the court's overruling of the demurrer.

DISPOSITION
The dispositional order is affirmed.
WE CONCUR: ELIA and MIHARA, JJ.
NOTES
[1] Unspecified section references are to the Penal Code.
[2] Section 186.22, states more fully:

"(a) Any person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang, shall be punished by imprisonment in a county jail for a period not to exceed one year, or by imprisonment in the state prison for 16 months, or two or three years.
"(b)(1) Except as provided in paragraphs (4) and (5), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished as follows: [¶] ..... [¶]
"(d) Any person who is convicted of a public offense punishable as a felony or a misdemeanor, which is committed for the benefit of, at the direction of or in association with, any criminal street gang with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison for one, two, or three years, provided that any person sentenced to imprisonment in the county jail shall be imprisoned for a period not to exceed one year, but not less than 180 days, and shall not be eligible for release upon completion of sentence, parole, or any other basis, until he or she has served 180 days...."
[3] All subdivision references in this part are to section 186.22.
[4] We note this issue is pending before the California Supreme Court in Robert L. v. Superior Court, review granted Oct. 24, 2001, S100359.